EQUITABLE & CENTRAL TRUST CO. *v.* ZDZIEBKO.

1. JOINT TENANCY—DEPOSITS IN BANK—STATUTES.
   Strict formalities are not requisite in creating joint bank account with right of survivorship (3 Comp. Laws 1929, § 12063).

2. SAME—ACKNOWLEDGMENT OF FORMER SIGNATURE.
   Acknowledgment of former signature on card creating joint tenancy in bank account, with intention thereby of creating new joint tenancy, is as effective in accomplishing said purpose as execution of new card.

On deposit of funds in bank account in name of depositor and another as creating joint tenancy, see annotation in 12 L. R. A. (N. S.) 355; L. R. A. 1917C, 571; 48 A. L. R. 189; 66 A. L. R. 881.

3. SAME—TRANSFER OF BANK ACCOUNT—"DEPOSIT."

   Transfer of bank account in mother's name to joint account with daughter was tantamount to "deposit" within meaning of statute providing for joint tenancy in bank accounts (3 Comp. Laws 1929, § 12063).

4. SAME—COMPLIANCE WITH STATUTE.

   Evidence *held,* to establish sufficient compliance with statutory requisites to create joint tenancy between mother and daughter in bank account formerly standing in mother's name only (3 Comp. Laws 1929, § 12063).

5. SAME—FRAUD—UNDUE INFLUENCE. ·

   Mother's act creating joint tenancy in bank account between herself and daughter, *held,* not result of fraud or undue influence, under record.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted June 7, 1932. (Docket No. 30, Calendar No. 36,511.) Decided October 3, 1932.

Bill by Equitable & Central Trust Company, a Michigan corporation, as administrator, against Mary Zdziebko and Guardian Detroit Bank to impress a constructive trust on the proceeds of a joint account. Decree for plaintiff. Defendants appeal. Reversed.

*McLeod, Fixel, Abbott & Fixel,* for plaintiff.

*Wm. Henry Gallagher* (*William H. Kaplan* and *S. Reymont Paul,* of counsel), for defendant Zdziebko.

*Warren, Hill & Hamblen,* for defendant Guardian Detroit Bank.

NORTH, J. This bill was filed for the purpose of determining the ownership of a bank deposit as between plaintiff, the administrator of the estate of Agatha Zdziebko, deceased, and the defendant Mary

Zdziebko. The depository bank was also made a party defendant. In the circuit court plaintiff had decree, and defendants have appealed.

Agatha Zdziebko at the age of 82 years died December 17, 1930. She was the mother of five sons and two daughters, the latter named Anna and Mary, respectively. The mother and daughters for many years occupied the home together in the city of Detroit, and at times other members of the family also lived in the household. Mary appears to have assisted largely in the discharge of household duties, while Anna over a period of years was employed in a department store. In 1923 Anna and her mother opened a joint bank account with right of survivorship in the predecessor of the defendant Guardian Detroit Bank. This account continued in this condition until Anna's death March 6, 1930. At that time there was a balance of substantially $600. Shortly after Anna's death the mother and daughter Mary went to the bank and it is Mary's contention that there was an interview between the bank teller and the mother at which time she directed the account to be changed to a joint account with right of survivorship between herself and Mary. The signature card which had been executed by the mother and Anna at the time the account was originally opened was thereupon signed by Mary. Mrs. Zdziebko was of Polish nationality and neither spoke nor wrote the English language. The teller spoke the Polish language, and the conversation relative to the transfer of the account was carried on in Polish between the teller and Mrs. Zdziebko. There is some uncertainty in the testimony as to whether Mrs. Zdziebko, by making her cross, re-executed the signature card. Because of the statute (1 Comp. Laws 1929, § 14219) Mary was not permitted to testify as to matters equally within the

knowledge of her deceased mother. The only other available witness was the teller, Mr. Wojcik. As to whether the mother re-executed the signature card, Wojcik in part testified:

"*Q.* And you say that at that time Agatha made her mark on the front of the card?
"*A.* Yes.
"*Q.* When Mary signed the card; is that correct?
"*A.* Yes. * * *
"*Q.* And that cross was on the card originally, wasn't it, when you pulled the card out to have Mary sign it, that cross was on there?
"*A.* I don't recall whether it was originally or whether I had to do that when she made the account joint."

The circuit judge was very much inclined to discredit the testimony of Wojcik, and evidently concluded that the signature card was not re-executed at the time Mary claims the joint account was created between herself and her mother. As hereinafter noted, we do not consider the question controlling. The circuit judge's opinion concerning this bank transaction contains the following:

"The defendant, Mary, claims that her mother, Agatha, at that time told Mr. Wojcik that she wished to have Mary's name written on the card, that Mr. Wojcik at that time explained in Polish to her that the effect of doing so would be to place the account in such condition that the entire amount thereof would go to Mary in the event of her death. Mr. Wojcik says that this was made very clear to Agatha and that she thoroughly understood it, and that thereupon Mary's name was written upon the card."

As to the issues in controversy, the circuit judge correctly said:

"The whole issue in this case is a question as to who is entitled to the bank account remaining in the bank at the time of Agatha's death. It is the contention of the plaintiff in this case that no joint tenancy was created in this bank account between Mary and her mother in accordance with the provisions and requirements of 3 Comp. Laws 1929, § 12063, and, further, that all efforts and attempts to create such an estate in the money in the bank was the direct result of efforts on the part of Mary through undue influence exercised by her over her mother, and that any steps taken by her mother which would in effect deprive the estate of the mother of these moneys was the direct result of Mary's undue influence and dominion over her mother."

The questions thus presented are (1) whether the act of the mother was the result of undue influence exercised upon her by Mary, and (2) whether a joint account with right of survivorship was created between Mary and her mother in accordance with the statute. The statute reads:

"When a deposit shall be made in any bank or trust company by any person in the name of such depositor or any other person, and in form to be paid to either or the survivor of them, such deposits thereupon and any additions thereto, made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants * * * and may be paid to either during the lifetime of both, or to the survivor after the death of one of them." 3 Comp. Laws 1929, § 12063.

The signature card contained the following:

"1766     Anna or Agatha Zjepko

"I hereby agree to the by-laws, rules and regulations of the First State Bank of Detroit.

"Payable to either or both of us and to the survivor, who by agreement between us, will be the sole owner of the balance of this account at the death of either.

"Mary Zdziebko

"Sign here          Anna Zjepko          Closed
                    her                   Transferred to 8405

"Agatha   X   Zjepko          6866.03
          mark     J. B. Josakosierowsk
                        Dec. 27, 1930."

In the opinion of the circuit judge touching this phase of the case it is noted:

"Their (Anna and Agatha) names do not appear upon the bank-book, but there does appear on the book, the number, 1766, being the same number as on the ledger sheet, exhibit 2, and the same number as on the signature card, exhibit 1.  *  *  *  There is no language which provides for the creation of a present estate in the account at the time of the deposit sufficient to negative the circumstances and other facts opposed to such estate.  *  *  *  It is very significant indeed that no new card was made at the time Mary and her mother went to the bank. It is further significant that no new ledger account was ever opened between Mary and her mother on the records of the bank; that up to the time of this trial, Mary's name appears nowhere upon the records of the bank except upon the card exhibit 1, and on her own separate bank account opened September 24th."

We think no particular significance attaches to the phases of the bank's records noted by the trial judge. The undisputed testimony is that this transaction relative to changing the account from one which stood in the name of Agatha as survivor of herself and her daughter Anna, to a joint account between Agatha and Mary was in accordance with

the methods adopted by the bank and their usual custom. By their signatures on the card the depositors "agree to the by-laws, rules and regulations of the bank." In any event, if the appellant as the survivor of her mother is otherwise entitled to this bank deposit, her rights ought not to be jeopardized by the somewhat lax methods used by the bank in transacting its business and keeping its records. Strict formalities are not requisite in creating a joint bank account with right of survivorship. *In re Rehfeld's Estate,* 198 Mich. 249; *People's State Bank* v. *Miller's Estate,* 198 Mich. 783; *In re Taylor's Estate,* 213 Mich. 497; *State Savings Bank* v. *Baker,* 257 Mich. 666; *In re Carlin's Estate,* 134 Misc. Rep. 596 (236 N. Y. Supp. 329). Regardless of whether Agatha re-executed the signature card, there is no valid reason why if her intent so to do is established, her acknowledgment of her former signature on the card should not be as effective as the execution of a new card. Nor is there any force to appellee's contention that no deposit was actually made at the time Mary's name was placed upon the signature card. To be sure, the statutory provision is "when a deposit shall be made in any bank;" but obviously a transfer of Agatha's individual account to a joint account between herself and her daughter was tantamount to a "deposit."

The trial judge seems to have concluded that our decision in *First National Bank & Trust Co.* v. *Huntley,* 251 Mich. 483, is quite controlling of the instant controversy. In this we cannot agree because the signature card in this case contains nothing that is indicative of an attempt to make a testamentary disposition of the bank deposit. That was a controlling issue in the *Huntley Case.* It was there held a deposit did "not create a joint account *in*

*præsenti,* but the provision for the payment to the sons was future and conditional.'' Instead of being adverse to appellant's contention, decidedly the opposite is true of the *Huntley Case,* wherein it is said, quoting syllabus:

"Where deposit in bank is specifically made joint in form provided by 2 Comp. Laws 1915, § 8040 (3 Comp. Laws 1929, § 12063), right of survivorship exists."

Appellee's contention that the alteration of the signature card was only for the purpose of creating a right or agency in Mary to withdraw funds from the account for her mother is not sustained by this record. We think there was sufficient compliance with the statutory requisites to create in the bank a joint account with right of survivorship between Agatha and Mary, and that it was the intention of the mother so to do.

Touching appellee's claim of fraud and undue influence, this record presents an unhappy picture. Without narrating details, it is sufficient to state that the family relations were, to say the least, unfortunate, characterized by frequent quarrels and physical encounters, drunkenness, calling of the police to settle family difficulties, etc. Of this phase of the case the trial judge said:

"Considerable testimony has been given in this case, showing the conditions in the home of the mother and Mary, and going back for some time prior to the death of the daughter, Anna. All of the children now surviving, except Mary, have testified to incidents of unkindness on the part of Mary to her mother. A little testimony has been introduced in opposition to this theory by disinterested neighbors. It is quite apparent that there has been much discord and lack of harmony between the chil-

dren in this family, and it is quite apparent that the sons are all very much displeased at this time over the fact that Mary seeks now to become the beneficiary of all of the money in the bank, without sharing any part thereof with any of them.''

Careful consideration of the record satisfies us that Agatha Zdziebko in changing her individual bank account to one that was joint between herself and Mary was not the victim of a fraud nor was her act in so doing the result of undue influence. We are constrained to hold that the result reached in the circuit court is not sustained by the record.

The decree entered in the circuit court will be set aside and one entered in this court in accordance herewith, with costs of both courts to appellants.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.