ESTATE OF PFEIFER: PFEIFER, Appellant, vs. PFEIFER, Administrator, Respondent.

*September 12—October 8, 1957.*

For the appellant there was a brief by *Surplice, Wilmer & Surplice* of Green Bay, and oral argument by *Richard C. Surplice*.

For the respondent there was a brief by *Duveneck & Fisler* of Green Bay, and oral argument by *Fred W. Fisler*.

BROWN, J. Richard Pfeifer, Sr., had two sons, Lyle, the appellant, and Richard, Jr., who, as administrator of his father's estate, is one of the respondents.

In 1940 or thereabouts, Lyle left the parental home in Brown county and thereafter lived elsewhere. Since 1945 he has lived in Portland, Oregon. The last time he was at

the family home was when his mother died, in 1950. About 1950 the father retired from work and went to live with his son, Richard. He continued to live with Richard the rest of his life and until the end he managed his own financial affairs. In June, 1952, he opened the savings account in question. Richard was not present when he did so nor did Richard know of its existence for some three and one-half years thereafter. There is no evidence of any declaration by the depositor or any other special circumstances attendant upon the creation of the account.

In *Estate of Staver* (1935), 218 Wis. 114, 260 N. W. 655, we stated the principle stated in headnote 1 of that case, that "Delivery to a depositor, of certificates of deposit payable to the depositor and a third person jointly, creates legal ownership in both of such joint payees directly, and further transfer, such as delivery of the certificates by the depositor to such third person, is unnecessary to entitle the third person thereto by right of survivorship; subject only to a showing by clear and satisfactory evidence that would warrant affecting such survivor's legal title with a trust."

It is immaterial to the principle involved whether the evidence of the deposit and its terms is in the form of a certificate of deposit or a passbook issued by the bank in the names of the joint payees. *Plainse v. Engle* (1952), 262 Wis. 506, 517, 56 N. W. (2d) 89, 57 N. W. (2d) 586.

In *Kelberger v. First Federal S. & L. Asso.* (1955), 270 Wis. 434, 71 N. W. (2d) 257, we reaffirmed *Estate of Staver, supra,* and held further that it is not essential to the contract between the depositor and the bank for the benefit of the third party that the third party have possession of the evidence of the joint deposit, such as the certificate or passbook or that he sign a signature card. It was held there that the intention of the one creating the account determines whether or not a true joint account with rights of survivor-

ship results from the deposit made in both names. The intention is to be determined by the trier of the fact from all the evidence. We repeated this in *Estate of Schley* (1955), 271 Wis. 74, 72 N. W. (2d) 767, and in *Zander v. Holly,* ante, p. 300, 84 N. W. (2d) 87.

Pfeifer, Sr., kept the account passbook in his safe, to which he alone had the combination. He made 41 deposits in and two withdrawals out of the account thereafter but so far as is known he never told anyone of the existence of the account or his purpose in creating it until a few weeks before his death, which occurred in January, 1956. Pfeifer then became seriously ill and his son, the respondent, Richard, took him to Madison for treatment. On the way the father told the son of the existence of the joint account, said that Richard might draw on it if necessary to pay the expenses of the illness, and gave Richard the combination of the safe so that he might get the passbook. Till then Richard did not know that a joint account existed. The father's last illness was short and Richard, Jr., did not draw upon the account. It stands now as it did when the father died.

Richard, Jr., was appointed administrator of his father's estate. As such he listed the joint savings account for inheritance-tax purposes but omitted it from his final account. The heirs are the two sons of the deceased. Lyle objected to the allowance of the final account, contending that the administrator must include the savings account as an asset of the estate, available for the payment of claims and for distribution to the heirs. The trial court determined otherwise and we agree.

Although the form of the account is not conclusive, as we said in the cases, *supra,* an account opened in joint names raises a rebuttable presumption that the creator of such an account intended the usual rights incident to jointly owned property, such as rights of survivorship, to attach to it. Evidence showing a different intent, for instance that the joint

names were adopted for convenience without the intent of conferring ownership, may serve to prove agency or trusteeship in the third party in respect to the account but in the absence of such evidence, which must be clear and satisfactory, the presumption that the depositor intended the usual incidents of jointly held property when he opened a joint account is sufficient to support a finding to that effect.

"The legal title being in the survivor, it would be necessary to show by clear and satisfactory evidence a conscientious duty upon the part of the survivor to hold the title in trust for another. In the absence of such a showing the complete ownership must be held to be in the survivor." *Estate of Staver, supra* (p. 122).

In the present case there is no testimony of word or condition contemporaneous with the creation of the account which rebuts the presumption that Pfeifer then intended it to have the ordinary attributes of joint accounts. For such rebuttal appellant relies on Pfeifer's later conduct and conversation, first, that he concealed the existence of the account from the co-owner; second, that when he revealed it he limited its use to the payment of his own bills.

From June 30, 1952, when Pfeifer, Sr., opened the account with a deposit of $1,000 to December 1, 1955, the date of the last entry before his death, the account shows 41 deposits and only two withdrawals. In that time the balance was built up from the initial deposit of $1,000 to $9,076.86. It is apparent from this that the account was not established or used for the routine payment of bills. Rather, it was a depository in which to accumulate funds which were not needed for Mr. Pfeifer's ordinary expenses. By establishing a joint account the father could keep the money available for use but with certainty that the unused balance would go at his death to the son with whom he lived. It was not necessary for this purpose that Richard should know there was such an account. When it appeared that Mr. Pfeifer

might be faced with heavy expenses he let Richard know that a fund responsive to Richard's signature was available to meet them.

The face of the account shows that its principal use and purpose was for the accumulation of money. That being so, we find nothing in Pfeifer's silence concerning its creation or the time and manner in which he revealed its existence inconsistent with an intent to establish and maintain a joint account of the usual characteristics. To accomplish the effect which appellant Lyle wishes the words and conduct to have, they should provide clear and satisfactory proof that Mr. Pfeifer did not intend the account which he created in joint form to have the usual incidents of such accounts. We consider that the evidence fails to meet the requirement.

There was testimony that Richard, Jr., at first considered the money belonged to his father and that his brother Lyle had equal rights in it. However this may affect the personal relationship, it does not affect the legal question or the obligations of Richard as administrator.

*By the Court.*—Judgment affirmed.