RE FREDERICK R. BAMBERGER ESTATE
BARBOUR, Respondent v. THE FIRST CITIZENS
NATIONAL BANK OF WATERTOWN, et al., Respondents
and BARBOUR, Jr., Appellant

(86 N.W.2d 526)

(File No. 9650. Opinion filed December 5, 1957)

Rehearing denied January 6, 1958

**Austin & Hinderaker** and **W. A. Hackett,** Watertown, for Appellant. **Clark & Costello,** Chicago, Ill., of counsel.

**Loucks, Oviatt & Bradshaw,** Watertown, for Respondent **David A. Barbour. Frank T. Platka,** Chicago, Ill., of counsel.

**Henrikson & Lobitz,** Watertown, for First Citizens Nat. Bank of Watertown, individually and as executor of the estate of Frederick R. Bamberger, deceased.

**Phil Saunders,** Atty. Gen., for the State.

HANSON, J. This is an action to determine adverse claims to a joint bank account. According to the records of the First Citizens National Bank of Watertown the account is payable to "Frederick R. Bamberger or James A. Barbour, as joint tenants with right of survivorship and not as tenants in common." Bamberger died testate on March 23, 1954. The issue is whether the balance remaining in the joint account is an asset of the estate or belongs to the survivor, James A. Barbour. Judgment was entered in favor of the estate and Barbour appeals.

For the most part the facts are not disputed. From them it appears that for many years Frederick R. Bamberger, a bachelor, resided on a farm near Summit, South

Dakota. During his later years he lived in the city of Watertown. His only heirs at law were James A. Barbour, Jr., and David A. Barbour, nephews, and Frances Barbour Richards, a niece.

David lived in the eastern part of the United States from 1945 to December 1953 and never visited his uncle. On the other hand, James lived in and around Chicago at all times and visited his uncle in South Dakota in 1947, 1951 and 1953. In 1950 Bamberger visited James in Chicago.

On January 12, 1942, Bamberger opened a savings account in his own name in the First Citizens National Bank of Watertown, with an initial deposit of $4,336.10. He signed a signature card and was issued a passbook. At some later date not established by the evidence Bamberger wrote the words "Or James A. Barbour 1518 Hood Ave Chicaago Ill" after his own name in the passbook. The following notation was then rubber-stamped thereon "As joint tenants with right of survivorship and not as tenants in common." A similar change was made on the bank's ledger sheet.

All deposits were made by Frederick R. Bamberger. The largest deposit of $32,880 was entered on September 30, 1948 following the sale of his farm. Bamberger kept the passbook in his possession at all times and made all the withdrawals. At the time of his death there was $37,654.62 on deposit in the joint account.

Bamberger executed his last will on August 25, 1942. The will provided for the equal distribution of his estate between his two nephews, David and James Barbour. His niece was not given a share in the estate.

On August 3, 1948, Bamberger executed a codicil to his will. In it he indicated that he had entered into a contract to sell his farm for $35,000 and had disposed of his cattle, farm machinery, and other tangible property at a farm auction sale. Otherwise he reaffirmed his intention that his entire estate be equally divided between his two nephews, share and share alike. The will and codicil were admitted to probate by the Codington County Court.

After the death of Bamberger the following note was

found among his effects: "James if anything should happen to this body such as paralysis I think it best to get it down to Chicago in someplace to be taken care of untill the end comes just so as to be nearer the cemetery to save you trouble."

Many states now have statutes governing joint bank accounts. We have no such legislation. See Article by R. B. Palmer in S.Dak.Bar. Jour. Oct. 1948, p. 146. In the absence of statute other courts have attempted to rationalize joint bank accounts on common-law principles of joint tenancy, gifts, and trusts. See 7 Am.Jur., Banks, § 425 et seq.; Annos. in 48 A.L.R. 189, 66 A.L.R. 881, 103 A.L.R. 1123, 135 A.L.R. 993, and 149 A.L.R. 879; Articles in 41 Cal.L.Rev. 596, 53 Col.L.Rev. 103, and 15 Corn. L. Quarterly 96.

The cases are many and varied on the subject. They reflect a continuing struggle on the part of the courts to fit a method of property ownership unknown to the common law into one of its time-honored concepts. Some of the difficulty encountered in this regard is stated in the case of In re Schneider's Estate, 6 Ill.2d 180, 127 N.E.2d 445, 447, as follows:

> "The familiar joint bank account has had an uneasy career in the courts because the relationships which it contemplates do not fit readily into common-law categories. The four unities of the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and the difficulty of applying the common-law concept of joint tenancy to a fluctuating res have caused difficulties. Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems stemming from joint bank accounts, for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties."

A joint bank account has been referred to as a "poor man's will", In re Edwards' Estate, 140 Or. 431, 14 P.2d

274, 276, but fails as a testamentary disposition because it does not conform to the statute of wills. It lacks the express declaration necessary to the establishment of a valid trust.

A joint bank account resembles a joint tenancy but lacks its essential qualities. In this regard SDC 51.0212 governed the creation of a joint tenancy at the time Bamberger established the joint account in question. Under this statute the coexistence of the four unities was required. In re Lower's Estate, 48 S.D. 173, 203 N.W. 312. The statute was amended by Ch. 255, Laws 1951 (now SDC Supp. 51.0212). As the amendment is not retroactive its effect, if any, on this particular joint bank account cannot be considered. In re Webb's Estate, 49 Wash.2d 6, 297 P.2d 948.

Notwithstanding, it is now "well established that a bank account may be so created that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other." 7 Am.Jur., Banks, 425, p. 299. In our opinion this can most logically be accomplished by simply recognizing and giving effect to the contract of deposit.

The contract originates with the deposit of funds in a bank. A creditor-debtor relationship results governed by the contract. Flaherty v. Bank of Kimball, 75 S.D. 468, 68 N.W.2d 105. The depositor may direct the manner in which the funds shall be paid. He may accordingly establish a joint account in the name of himself and another payable to either or their survivor. In that event the relationship is in the nature of a contract for the benefit of a third party. Hawkins v. Thackston, 224 S.C. 445, 79 S.E.2d 714.

The bank is authorized by statute to pay out the funds according to the deposit agreement. SDC 6.0414 provides:

> "Whenever a deposit is made in the names of two persons, payable to either, or payable to either or the survivor, it is payable to either one of such persons, whether the other be living or not; and

the receipt or acquittance of either of such persons shall be valid and sufficient release and discharge to the bank for any payment made." (The statute was amended by Ch. 13, Laws 1951, to include deposits in the names of two or more persons. The law as amended now appears as SDC Supp. 6.0414.)

The statute was enacted primarily for the protection of the depository banks. Vol. 2, Paton's Digest of Legal Opinions, p. 1689. However, the statute also expresses legislative approval and recognition of joint bank accounts and sanctions their payment according to the contract of deposit.

■ The controlling consideration is the intention of the original depositor. "A joint ownership of a deposit is created when it clearly appears to have been the intention of the original owner to divest himself of the exclusive ownership and control of the money and vest such ownership and control jointly in himself and another with the attendant right of survivorship." In re Lewis' Estate, 194 Miss. 480, 13 So.2d 20, 25. The burden of proof is on the beneficiary depositor to show the contract of deposit was created for his benefit. SDC 10.0204; Fry v. Ausman, 29 S.D. 30, 135 N.W. 708, 39 L.R.A.,N.S., 150.

■ Many joint deposits are established for the convenience or benefit of the original depositor. Whether or not the original depositor intended the joint account for his own convenience or for the benefit of the nondepositing payee is a factual question to be determined from all the facts and circumstances in the case. The form of the contract of deposit is not itself controlling. Castle v. Wightman, 303 Mass. 74, 20 N.E.2d 436. In the absence of contrary evidence, however, it serves as prima facie proof of beneficial intent.

In this case there is little evidence outside the form of the account itself indicating the joint bank account was created for the benefit of the nondepositing-payee, James A. Barbour. In fact the preponderance of evidence appears otherwise.

■ It is not essential to the creation of a joint bank account with right of survivorship that the beneficiary depositor have knowledge of the account; that he have possession of the passbook; that he sign a signature card; or make withdrawals therefrom. However, these are all important factors and competent evidence bearing on the question of intention. In this regard it is significant to note that neither Bamberger nor Barbour ever signed the joint signature card agreement furnished by the bank and ordinarily used for the establishment of a joint account.

■ James A. Barbour did not live at 1518 Hood Ave., Chicago, Illinois, after May 1, 1947. As this was the address written on the passbook when the name of Barbour was added, the trial court could reasonably believe the joint account was established sometime before May 1, 1947. Later Bamberger converted the bulk of his estate to cash and executed a codicil showing the changed nature of his property. The codicil was executed on August 3, 1948. In it he reaffirmed a desire that his entire estate be equally divided between his two nephews share and share alike. A contrary intention was never expressed by him. Under the circumstances the clearly expressed testamentary disposition is compelling evidence of his intention. Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841.

■ The letter left by the decedent to James is also evidence the joint account was established by Bamberger for his own convenience or benefit. It could be determined from this letter that James was to draw from the account to take care of hospital and medical expenses in the event Bamberger became sick or disabled. Accordingly, the account now belongs to the Estate of Frederick R. Bamberger.

The judgment of the trial court is affirmed.

All the Judges concur.