FARMERS STATE BANK OF WINNER, South Dakota, as Executor of the Estate of W.W. Kositzky, Deceased, and Astrid Kositzky, Plaintiffs and Appellees,

v.

Robert WESTRUM, Dorothy Westrum, Barbara Westrum, and Martha Griesbach, Defendants and Appellants.

No. 14021.

Supreme Court of South Dakota.

Considered on Briefs Oct. 26, 1983.

Decided Dec. 21, 1983.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for plaintiffs and appellees.

Michael "Mick" Strain, White River and Dallas E. Brost of Brost & Brost, Presho, for defendants and appellants.

HENDERSON, Justice.

### PROCEDURAL HISTORY

Appellees, the widow of W.W. Kositzky and the executor of his estate, filed a complaint on September 14, 1981, against appellants seeking to determine ownership of

a bank account and reimbursement for tractor repair, grain storage, and travel expenses. A jury trial ensued on September 13, 1982, wherein appellants unsuccessfully moved for a directed verdict on the bank account issue. Verdicts in favor of appellees were returned by the jury. Judgment was entered upon October 15, 1982, and appellants filed their notice of appeal to this Court on December 13, 1982. We affirm in part and reverse and remand in part.

## FACTS

Decedent W.W. Kositzky and his wife Martha Kositzky parented a child born in May 1918. This child later married and is now Dorothy Westrum who, along with her husband Robert Westrum and her children Barbara Westrum and Martha Griesbach, are appellants herein. Martha Kositzky died in June of 1958. In early 1959, W.W. Kositzky transferred some South Dakota real estate to Dorothy Westrum and in conjunction with her established two joint tenancy bank accounts, one of which is at issue here.

On June 15, 1959, appellee Astrid Kositzky and W.W. Kositzky were married. Appellee Kositzky testified at trial that during the early 1960s, W.W. Kositzky directed her to the Farmers State Bank of Winner with a note to insert appellee Kositzky as a joint tenant on the joint checking account between W.W. Kositzky and Dorothy Westrum. Appellee Kositzky's signature appears as an authorized signature on the front of the bank signature card. However, appellee Kositzky's signature does not appear on the back of the bank signature card under the language establishing a joint tenancy between W.W. Kositzky and Dorothy Westrum.· A 1976 letter from W.W. Kositzky to his brother was introduced into evidence wherein decedent referred to the account as owned by himself and appellee Kositzky. Checks were written on this account by appellee Kositzky for nearly twenty years. The trial court decided a question of fact existed and instructed the jury that W.W. Kositzky's in-

tent was dispositive of this issue. A verdict in favor of appellee Kositzky for $17,515.99 was returned by the jury.

In 1975, W.W. Kositzky sold his farm equipment, including a 1974 Case 970 tractor, to appellants Dorothy and Robert Westrum. This tractor was used from 1975 through 1979 upon appellant Westrums' farm. In 1980, the tractor was stored at a lumberyard owned in part by W.W. Kositzky. Appellant Robert Westrum testified that the Rosebud Grain Company, also partially owned by W.W. Kositzky, damaged the tractor moving grain in February of 1980. Clifford Klien, a Rosebud Grain Company officer, testified that in April or May of 1980, company employees had a difficult time starting the tractor and used it on one occasion for forty-five minutes before it failed. W.W. Kositzky had the tractor repaired at his personal expense of $2,758.88. Appellee Kositzky testified that three weeks prior to his death, W.W. Kositzky told her appellant Robert Westrum was indebted to him for the tractor repair. Appellant Robert Westrum testified that W.W. Kositzky told him that since the tractor was damaged on Rosebud Grain Company business that W.W. Kositzky would personally pay the repair bill. The jury returned a verdict in favor of appellee estate for the cost of repair paid by W.W. Kositzky. Additionally, the trial court awarded $1,006.52 in prejudgment interest on this claim.

During 1978, grain belonging to appellant Westrums was stored in Rosebud Grain Company tanks. After W.W. Kositzky's death, the grain company brought a successful action against his estate for unpaid storage rental for appellant Westrums' grain. Appellee estate paid the judgment and sought indemnity from appellants. On this cause of action, the jury awarded appellee estate $5,993.34, and the trial court awarded $1,276.58 prejudgment interest.

## ISSUES

### I.

WAS OWNERSHIP OF THE JOINT CHECKING ACCOUNT A QUESTION

OF FACT PROPERLY SUBMITTED TO THE JURY?

## II.

WAS THE JURY'S VERDICT FOR TRACTOR REPAIR AND GRAIN STORAGE SUSTAINED BY THE EVIDENCE?

## III.

DID THE TRIAL COURT PROPERLY AWARD PREJUDGMENT INTEREST?

## DECISION

## I.

SDCL 51–22–5 provides:

Whenever a deposit has been made or shall hereafter be made, in any bank in the names of two or more persons, payable to any of them or payable to the survivor of them, such deposit or any part thereof, or any interest or dividend thereon, may be paid to any one or more of said persons whether the other be living or not, and the receipt or acquittance of the person or persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.

In *Barbour v. First Citizens Nat'l Bank of Watertown*, 77 S.D. 106, 86 N.W.2d 526 (1957) (*Wagner v. Wagner*, 83 S.D. 565, 163 N.W.2d 339 (1968) overruled the portion of *Barbour* on burden of proof), we interpreted SDC 1939 § 6.0414 [1] as recognizing joint bank accounts on a contract theory, with the noncontributing party obtaining third-party beneficiary status. *See also, O'Hair v. O'Hair*, 16 Ariz.App. 565, 494 P.2d 765 (1972). *See generally*, Lundberg, *Joint Bank Account Held Invalid*, 3 S.D.L.Rev. 174 (1958); Lundberg, *Joint Bank*

*Accounts in South Dakota—A Critical Analysis*, 2 S.D.L.Rev. 88 (1957).

The contract language on the back of the signature card signed by W.W. Kositzky and appellant Dorothy Westrum in 1959 provides:

## JOINT ACCOUNT—PAYABLE TO EITHER OR SURVIVOR

We agree and declare that all funds now, or hereafter, deposited in this account are, and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common, and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by, or upon the order of, either of us or the survivor.

It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

■ Although appellee Kositzky failed to sign the back of the signature card, *Barbour*, 86 N.W.2d 526, is instructive since we held therein the original depositor's intention is the controlling consideration. Specifically, our holding in *Barbour* makes clear that it is not essential to the creation of a joint bank account with a right of survivorship that the beneficiary sign the signature card. This view was buttressed in *Karlen v. Karlen*, 89 S.D. 523, 534, 235 N.W.2d 269, 275 (1975), wherein we quoted the following language of *Equitable & Central Trust Co. v. Zdziebko*, 260 Mich. 366, 372, 244 N.W. 505, 507 (1932) [2] with full approval: "[R]ights ought not to be jeopardized by the somewhat lax

---

1. For our purposes here, SDC 1939 § 6.0414 is substantively identical to SDCL 51–22–5. *Wagner*, 163 N.W.2d at 342, reaffirmed the contract analysis of our *Barbour* holding.

2. In *Zdziebko*, 244 N.W. 505, a mother and daughter were recorded as joint tenants of a savings account. When the daughter died, the mother went to the bank with another daughter

and had this second daughter add her signature to the card of the former account. The issue was whether a new account had been created, thereby allowing the funds to go directly to the second daughter upon her mother's death, or if the funds were part of the mother's estate. The Court adopted the former view.

methods used by the bank in transacting its business and keeping its records. Strict formalities are not requisite in creating a joint bank account with right of survivorship." Further strength for this position was provided by our holding in *Wagner*, 163 N.W.2d 339, that in the absence of clear and convincing evidence to the contrary, it is presumed the depositor intended the usual incidents of jointly held property when he established a joint account.

■ In our review of the evidence, we are convinced that a factual question developed concerning whether W.W. Kositzky intended to establish a joint account with appellee Kositzky on the account he held with appellant Dorothy Westrum. Jury instruction number eight provided in part:

The law in this state is that the intention of the depositor of the funds in the account is controlling as to whether an account is a joint account with other persons. The form of the agreement of deposit with the bank, that is whether or not a signature card is signed or a joint tenancy agreement is signed is not controlling, but should be considered by you along with the other evidence in this case to determine the intention of the depositor of the funds in the account.

Based upon the above-referenced review of our decisional law, we fail to see any error in this portion of the trial court's instructive language. Although we certainly caution against using the procedure employed herein, we hold that a joint account was created between W.W. Kositzky and appellee Kositzky.

■ Our holding that W.W. Kositzky created a joint account with appellee Kositzky does not automatically lead to the conclusion that the joint account with appellant Dorothy Westrum was terminated. As the Missouri Supreme Court has held: "An intent to terminate the joint tenancy agreement cannot be equated with actual termination." *In re Estate of LaGarce*, 487 S.W.2d 493, 501 (Mo.1972). Had W.W. Kositzky withdrawn all of the funds from the joint account or removed appellant Dorothy Westrum's name from the account, we would have no difficulty finding a termination. *See Karlen*, 235 N.W.2d at 276 (for withdrawal of funds); Annot., 161 A.L.R. 71 (1946); Willems, *Expropriating the Joint Account: The Teachings of Brown v. Bowery*, 99 Banking L.J. 536, 540 (1982) (for the limited proposition that actually removing a person's name from a joint account destroys the joint tenancy). Since South Dakota uses a contract analysis (based upon *Barbour*) rather than the four unities doctrine for joint bank accounts,[3] the effect of adding appellee Kositzky to the existing joint account without any other action, was to create a joint account with two third-party beneficiaries, appellant Dorothy Westrum and appellee Kositzky, both having rights of survivorship. This is our pivotal holding herein.

Therefore, the trial court's jury instruction number eight was erroneous as it failed to take this option into account. Jury instruction number eight permitted the jury to find that the checking account was owned by Astrid Kositzky *or* Dorothy Westrum; in such an alternative it erred. We reverse and remand this issue for a division consistent with the decision herein.

## II.

Appellants assert the evidence adduced at trial was insufficient to sustain the jury's verdict for tractor repair and grain storage.

■ Trial courts can only present those issues to the jury by way of instructions which find support by competent evidence in the record. *Frazier v. Norton*, 334 N.W.2d 865 (S.D.1983). As a reviewing Court, we view the evidence and all reasonable inferences therefrom in a light most

**3.** For an interesting account of the difficulties that courts can encounter employing the four unities doctrine of joint tenancy to joint bank accounts, see Volkmer, *Nebraska Law of Concurrent Ownership*, 13 Creighton L.Rev. 513 (1979). An informative account of different approaches to joint bank accounts is provided in Boyce, *Joint Bank Accounts with Right of Survivorship: A Conceptual Maze*, 6 Cap.U.L.Rev. 477 (1977).

favorable to support the verdict. *Alberts v. Mut. Serv. Cas. Ins. Co.*, 80 S.D. 303, 123 N.W.2d 96 (1963). It is the jury's function, rather than ours, to resolve conflicting evidence. *Urban v. Wait's Supermarket, Inc.*, 294 N.W.2d 793 (S.D.1980). The jury is entitled to accept one witness' version of the facts and reject anothers. *Lukens v. Zavadil*, 281 N.W.2d 78 (S.D. 1979).

In reviewing the evidence adduced at trial, we are convinced it was sufficient to sustain the jury's verdicts.

### III.

Lastly, appellants assert the trial court could not award prejudgment interest because the jury verdict did not include interest.

SDCL 21–1–11 provides:

> Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor, from paying the debt.

We note appellees' complaint prayed for prejudgment interest.

We held in *Durham v. Ciba-Geigy Corp.*, 315 N.W.2d 696, 701 (S.D.1982): "If it is apparent that the jury has failed to include an interest award in its verdict, the trial court has the power to add interest to the verdict if the party is legally entitled to interest." *See also, American Fed. Sav. v. Mid-America Serv.*, 329 N.W.2d 124 (S.D. 1983); *American Property Serv. v. Barringer*, 256 N.W.2d 887 (S.D.1977).

The trial court's prejudgment interest award is affirmed.

Affirmed in part; reversed and remanded in part.

All the Justices concur.