**In re the ESTATE OF Louise F. NORDORF, Deceased.**

**No. C7–84–1655.**

Court of Appeals of Minnesota.

April 2, 1985.

Paul D. Baertschi, Frederick R. Kopplin, Minneapolis, for Frances Nygren.

Richard Hunegs, Edward Gearty, Minneapolis, for Leona Nordorf, Edward H. Johnson, and estate of Jules Goldberg, heirs at law.

Heard, considered and decided by CRIPPEN, P.J., and PARKER and WOZNIAK, JJ.

## OPINION

PARKER, Judge.

This is an appeal from the probate court's order directing the balances in decedent's bank accounts to be administered as assets of the estate. Appellant claims the probate court erred in finding the joint tenancy accounts to be assets of the estate. We affirm.

## FACTS

Louise Nordorf died intestate on March 13, 1983. Her sole heirs at law are her four first cousins: appellant Frances Nygren and respondents Leona Nordorf, Edward Johnson, and Jules Goldberg.

Louise was hospitalized for treatment of an infection in February 1983. Appellant Frances Nygren brought Louise's bills to

the hospital and mailed them after Louise had written out the checks. At that time Louise told Frances she had a bank account in excess of $100,000.

While still hospitalized, Louise suffered a stroke. She experienced loss of vision, partial loss of sensation on her left side, and slurring of speech as a result of the stroke.

Eight days after Louise suffered the stroke, Frances brought Louise two signature cards from Metropolitan State Bank in Minneapolis, where Louise had a checking account with a balance of $386.87 and a savings account with a balance of $124,-908.29. Louise did not ask Frances to obtain the signature cards.

Frances' stated intent in having Louise sign the cards was to enable her to pay Louise's bills. Frances told Louise that signing the cards would give her access to the accounts so she could take care of Louise. Louise responded, "okay," and signed the cards. Louise made no response when the nurse who witnessed the signing asked her if it was all right to sign the cards. Louise died later that day.

At trial conflicting testimony was offered regarding Louise's mental condition prior to signing the cards. Louise's doctor testified, based on medical records and his own treatment, that she was not in a condition to make a rational judgment. The doctor testified that Louise was disoriented at various times after the stroke. Frances testified that Louise recognized her when she brought the cards to the hospital room. The nurse who witnessed the signing testified that Louise seemed oriented the morning she signed the cards.

In its findings of fact the probate court found that Louise placed the accounts into joint tenancy for the sole purpose of convenience. The probate court also found that Louise lacked the mental capacity to understand the nature of the transaction and the intent to make a gift of the sums in the accounts. The probate court ordered the balances in the checking and savings accounts to be administered as assets of the decedent's estate.

## ISSUES

1. Did the probate court err in finding that decedent did not intend to create joint tenancy accounts?

2. Did the probate court err in finding that decedent lacked the mental capacity to create joint bank accounts?

## DISCUSSION

### I

■ Section 528.05(a) (1984) of the Minnesota Multi-Party Accounts Act provides:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention * * *.

Thus, unless clear and convincing evidence of a contrary intent exists, the statute presumes survivorship.

The probate court found that Louise placed the accounts into joint tenancy for the sole purpose of convenience and had no intention of creating a multi-party account within the meaning of the Act. Appellant argues that the probate court's finding of a contrary intent is not sustained by clear and convincing evidence. Appellant also argues that the probate court erred in applying a "rebuttable presumption" standard rather than the clear and convincing standard required by the statute.

■ The presumption of ownership by surviving parties to a joint account does not arise, however, if the account was created through the violation of a fiduciary duty. *Carlson v. Carlson,* 363 N.W.2d 803 (Minn.Ct.App.1985). One acting in a fiduciary capacity must exercise the utmost fidelity toward the principal and owes the principal a duty of full disclosure. *Id.*

■ The probate court found that Louise and Frances had a fiduciary relationship at the time of Louise's death. The record does not indicate that Frances ever disclosed to Louise that signing the cards would create a joint tenancy and that upon

Louise's death all funds would go solely to Frances. Therefore, Frances breached her fiduciary duty of full disclosure. The presumption of joint ownership does not apply because the joint accounts were invalidly created; thus, Frances has no right to possess the funds under Minn.Stat. § 528.05. Even if Frances had not been a fiduciary and the presumption of joint ownership applied, we would hold that the evidence was clear and convincing that Louise Nordorf did not intend Frances to have survivorship rights under the statute.

## II

Appellant contends that the probate court applied an incorrect standard in concluding that Louise lacked the mental capacity to make a valid transfer of the accounts from sole to joint ownership. Appellant argues that the transaction has a testamentary effect and that a testamentary standard of capacity should be applied to the transfer.

Section 528.07 of the act provides that transfers "are effective by reason of the account contracts involved and this statute, and are not to be considered as testamentary * * *." Therefore, a contract analysis is appropriate.

The contractual standard for determining whether a person is mentally incapable is whether that person has the ability to understand to a reasonable extent the nature and effect of what he is doing. *Krueger v. Zoch,* 285 Minn. 332, 334, 173 N.W.2d 18, 20 (1969). The record supports the probate court's finding that Louise lacked the ability to understand the effect of transferring her funds into the joint accounts, so that she therefore lacked the capacity to create them.

## DECISION

The probate court did not err in ordering the funds in Louise Nordorf's accounts be distributed as assets of her estate.

Affirmed.