In the Matter of the ESTATE of
Frances T. KUHN, Deceased.

No. 17256.

Supreme Court of South Dakota.

Considered on Briefs March 20, 1991.

Decided May 15, 1991.

Mark K. Kroontje of Seiler & Cain, Herreid, for appellee.

Daniel J. Todd of Bormann & Buckmeier, Mobridge (Daniel J. Todd and Laurie M. Bauer of Bormann & Buckmeier, on brief), for appellant.

SABERS, Justice.

Whether joint accounts passed to survivor upon death of original depositor or are part of decedent's estate.

### Facts

Frances T. Kuhn (decedent) was born in Zeeland, North Dakota in 1910. She lived most of her life in McIntosh, South Dakota, where she and her husband owned a grocery store. When she died in 1989, she had been a widow for at least ten years. She was survived by several brothers and sisters, including Frank Ziegler (Frank), who lived in Zeeland, and Eva Jangula (Eva), who lived in Bismarck.

Between June 26, 1981 and August 9, 1988, decedent purchased eighteen certificates of deposit (C.D.'s) made payable to "Frances T. Kuhn or Frank Ziegler." These C.D.'s were purchased at various times from two different banks.

On December 19, 1988, decedent executed a will devising "all of [her] property" after expenses for last illness and funeral to Frank and Eva. The will expressly dis-

inherited two other brothers and two other sisters. It made no reference to the C.D.'s payable to decedent or Frank.[1]

In February of 1989, decedent was hospitalized and later transferred to a nursing home. On March 2, 1989, decedent executed a power of attorney in favor of Frank. Frank then opened a checking account in the name of "Frances T. Kuhn or Frank J. Ziegler" as a convenience for paying decedent's bills.

On September 5, 1989, a final C.D. was purchased. Like the other eighteen C.D.'s decedent purchased over the years, this one was payable jointly to decedent or Frank. At the time of decedent's death on December 16, 1989, the total value of the nineteen C.D.'s was $67,148.13. In addition, the balance in the checking account which Frank established pursuant to his power of attorney was $8,734.36.

On March 16, 1990, Frank filed a petition for summary administration of decedent's estate. Eva objected to the petition because Frank failed to include the joint C.D.'s and the joint checking account among the assets of the estate. At a hearing on Eva's objections held May 29, 1990, Frank and Eva stipulated in open court that the balance in the joint checking account should be considered part of decedent's estate to be distributed equally between the two of them.

The circuit court granted Frank's petition for summary administration, finding that the nineteen C.D.'s were not part of decedent's estate but passed to Frank by right of survivorship. The court entered findings of fact and conclusions of law to this effect on June 13, 1990.

On appeal, Eva claims the C.D.'s were improperly excluded from the assets of the estate. She claims that:

(1) There was clear and convincing evidence that decedent did not intend a right of survivorship to attach to the C.D.'s held in joint tenancy but intended them to be part of the estate devised to both Frank and Eva.

(2) The circuit court misapplied SDCL 30-23-46.

(3) Frank breached his fiduciary duty to decedent by failing to disclose the legal effects of joint tenancy, and therefore he should not receive the benefit of the presumption that decedent intended the jointly held C.D.'s to pass to him by right of survivorship.

### 1. *Intent*

■ "[A]n account opened in joint names raises a rebuttable presumption that the creator of such an account intended ... rights of survivorship[ ] to attach to it." *Wagner v. Wagner*, 83 S.D. 565, 163 N.W.2d 339, 342 (1968) (*quoting Estate of Pfeifer*, 1 Wis.2d 609, 85 N.W.2d 370, 372 (1957)). The principle is the same whether the asset is a bank account or a C.D. *Estate of Pfeifer*, 85 N.W.2d at 372; SDCL 51A-10-1.

■ The presumption that an asset held in joint tenancy passes to the second party upon the death of the first can be rebutted only by a showing with clear and convincing[2] evidence that the original depositor or purchaser did not intend rights of survivorship to attach to the joint asset, but merely intended the arrangement for her own convenience. *Roth v. Pier*, 309 N.W.2d 815,

---

**1.** The will provided:
I. I hereby direct that all expenses of my last illness and funeral be paid out of my estate.
II. I hereby request my executor hereinafter named to sell all of my real estate and personal property and the proceeds thereof to become a part of my estate.
III. I hereby declare that I had three brothers and three sisters and I hereby exclude all of said persons, except as hereinafter set out, from receiving any share of my estate.
IV. I hereby give, devise and bequeath all of my property, subject to sale as hereinabove set out, to my brother, Frank Ziegler, and my sister, Eva Jangula.

**2.** Note that SDCL 30-23-46, discussed below, uses the phrase "clear and convincing" rather than "clear and satisfactory," the language most often employed by cases which pre-date the statute, such as *Roth, Kirsch* and *Wagner.* We perceive no material difference and observe that *Kirsch* uses the two phrases interchangeably, 298 N.W.2d at 72.

816 (S.D.1981); *Kirsch v. First National Bank of Watertown*, 298 N.W.2d 71, 72 (S.D.1980); *Wagner v. Wagner, supra.*

■ This rebuttable presumption that rights of survivorship attach to a joint account or C.D. holds true even where, as with eighteen of these nineteen C.D.'s, the words "right of survivorship" do not appear on the face of the instrument. SDCL 30–23–43(4) defines "joint account" as "any account payable on request to one or more of two or more parties *whether or not mention is made of any right of survivorship* [.]" (Emphasis added). SDCL 30–23–46 then attaches a presumptive right of survivorship to all such joint accounts by operation of law:

> Sums remaining on deposit at the death of a party to a *joint account* belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created.... A right of survivorship arising from the express terms of the account *or under this section* ... cannot be changed by will, unless the testator has clearly indicated the testator's intention that the terms of the account should be changed or modified to express the testator's true intention.

(Emphasis added). As this court stated in *Karlen v. Karlen*, 89 S.D. 523, 235 N.W.2d 269, 275 (1975), and repeated in *Farmers State Bank of Winner v. Westrum*, 341 N.W.2d 631, 633–634 (S.D.1983):

> "[R]ights ought not to be jeopardized by the somewhat lax methods used by the bank in transacting its business and keeping its records. Strict formalities are not requisite in creating a joint bank account with right of survivorship."

(*Quoting Equitable & Central Trust Co v. Zdziebko*, 260 Mich. 366, 244 N.W. 505, 507 (1932)). The critical inquiry is what the original depositor intended.

■ The question of what the original depositor intended is a question of fact. *Roth v. Pier, supra.* As with all findings of fact, this court reviews the trial court's determination of the original depositor's intention under the "clearly erroneous" standard. *Temple v. Temple*, 365 N.W.2d 561, 565 (S.D.1985). "The question is not whether this Court would have made the same findings that the trial court did, but whether, on the entire evidence, we are left with a definite and firm conviction that a mistake has been committed." *Kirsch, supra*, at 73 (*citing In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455, 459 (1970)).

■ The trial court found that Eva failed to prove by clear and convincing evidence that decedent did not intend the C.D.'s to pass to Frank by right of survivorship. This finding is supported by evidence in the record. Decedent discussed the concept of joint tenancy with her lawyer at the time of her husband's death, long before she purchased any of the nineteen C.D.'s in question. A short statement of the legal effects of joint tenancy was printed on the face of the first and largest C.D. decedent purchased. The banker who sold decedent this first C.D. also testified that, in accordance with his bank's standard procedure, the meaning of joint tenancy was explained orally to decedent at the time of purchase. An officer of the second bank where decedent purchased some of the other C.D.'s testified that she requested the same joint tenancy arrangement as at the first bank, and that "she knew what she was doing." All but one of the C.D.'s were purchased before decedent became physically incapacitated, most of them years before, when there was no apparent need to give Frank access to decedent's money for reasons of convenience.

There is some evidence in the record to the contrary which suggests that decedent may not have intended to exclude the C.D.'s from the property which she devised in her will to Frank and Eva. However, that is not the test. Frank does not have the burden of proving with clear and convincing evidence that decedent intended rights of survivorship to attach to the joint account she created. It is Eva who has the burden of proving with clear and convincing evidence that decedent did *not* intend rights of survivorship to attach to the joint account. The court was not clearly errone-

ous in finding that Eva failed to meet her burden, and we affirm.

### 2. *SDCL 30–23–46*

At the time of decedent's death, SDCL 30–23–46 stated in part: "A right of survivorship ... cannot be changed by will, unless the *testator has clearly indicated the testator's intention* that the terms of the account should be changed or modified *to express the testator's true intention*." [3] (Emphasis added). The trial court concluded that Eva "failed to establish by clear and convincing evidence that [decedent] did not intend *at the time of the creation of her accounts* to distribute the sums remaining on deposit at her death to anyone other than [Frank][.]" (Emphasis added).

Eva argues that under SDCL 30–23–46 she overcame the presumption of survivorship by a clear and convincing showing that decedent intended her *will* to change the express terms by which the C.D.'s were purchased. Eva claims that the court effectively concluded as a matter of law that only evidence of decedent's intent at the time the C.D.'s were purchased was relevant to the showing, and committed error in doing so.

■ However, it has been the law in South Dakota since 1877 that "[i]n case of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations." SDCL 29–5–3. "The general principle [of SDCL 29–5–3] ... precludes a court from ascribing to a testator an intention his will does not express[.]" *In re Hoisington's Estate*, 67 S.D. 280, 291 N.W. 921, 923 (1940).

■ We find no error in the court's conclusion. Even under the most generous reading of SDCL 30–23–46, Eva produced no clear and convincing evidence that decedent *at any time* "clearly indicated [her] intention" to destroy Frank's rights of survivorship in the joint accounts.[4]

### 3. *Breach of Fiduciary Duty*

In the Minnesota case *In re Estate of Nordorf*, 364 N.W.2d 877 (Minn.App.1985), decedent's cousin obtained decedent's signature to open a joint bank account with presumptive rights of survivorship hours before decedent's death. Decedent was disoriented from the effects of a stroke and the cousin did not attempt to explain to her the meaning of a joint tenancy account. Under these circumstances, the Minnesota appellate court agreed with probate court that decedent and cousin "had a fiduciary relationship at the time of [decedent's]

---

**3.** SDCL 30–23–46 was amended in 1990 to provide in part: "A right of survivorship ... cannot be changed by will, unless the will expressly provides that the terms of the account should be changed or modified."

**4.** In *Estate of Bol*, 429 N.W.2d 467 (S.D.1988), this court held that "share and share alike" language in the residuary clause of decedent's will was sufficient, under the circumstances of that case, to show an intent to revoke a trust account previously created by the decedent for the benefit of one of the two heirs of the residuary estate.

There are several reasons why *Bol* does not control the outcome of this case:

(1) SDCL 30–23–46 was not enacted until 1987, two years after Bol died. See discussion in text above.

(2) The "share and share alike" language in the Bol will is not present in the Kuhn will.

(3) The trial court in *Bol*, as finder of fact, found an intention to revoke the trust, whereas here the trial court found no intention to

withhold rights of survivorship from the joint accounts.

(4) A Totten or tentative trust vesting in the beneficiary at some point in the future is somewhat distinguishable from a joint asset where both parties may enjoy a present right of possession.

(5) As noted by the dissent in *Bol*, the decedent there held certain assets, other than those in the Totten trust, in joint tenancy with the heirs of her will, which apparently remained intact and were not similarly stripped of survivorship rights by the will. 429 N.W.2d at 472–473 (Sabers, J. (dissenting)). Finally, we decline to apply *Bol* to this joint account case because we believe it would require overruling both the "clear and convincing" standard for determining the intent of the original depositor and the burden of proof allocation favoring survivorship rights set forth in *Roth v. Pier, supra, Kirsch v. First National Bank of Watertown, supra,* and *Wagner v. Wagner, supra.* Overruling the settled law of this line of cases would be unwarranted and inadvisable.

death ... [cousin] breached her fiduciary duty of full disclosure[, and] [t]he presumption of joint ownership does not apply because the joint accounts were invalidly created[.]" *Id.*, 364 N.W.2d at 879–880.

Eva urges application of this theory to the present case. There are several problems with this claim.

■ First, Eva appears to be raising this issue for the first time on appeal. Neither in her objections to Frank's petition for summary administration, nor at trial, nor in her proposed findings of fact and conclusions of law did she suggest that Frank's breach of a fiduciary duty to decedent overcame the presumption of survivorship. The trial court made no finding of fact or conclusion of law regarding a fiduciary relationship between Frank and decedent. "According to the theory and design of our rules of practice, error may not be predicated upon a ruling of a trial court unless the matter has been fairly placed before it for decision by specifically pointing out the ground of fact or law relied upon by the litigant." *Baumgartner's Electric Constr. Co. v. DeVries*, 77 S.D. 273, 91 N.W.2d 663, 671 (1958), *rev'd on other grounds*, 359 U.S. 498, 79 S.Ct. 1117, 3 L.Ed.2d 976 (1959). *Accord Johnson v. John Deere Co.*, 306 N.W.2d 231, 239 (S.D. 1981).

■ Secondly, it was decedent, not Frank, who purchased the C.D.'s in question. Eighteen of these C.D.'s were purchased before a fiduciary relationship between Frank and decedent came into existence. According to Frank's uncontroverted testimony, he did not even know about the C.D.'s until the last year of decedent's life after she entered the hospital and the nursing home. While the final C.D. *was* purchased during the period of Frank's fiduciary relationship to decedent, it was purchased without his knowledge.

We find no merit in Eva's argument that Frank breached his fiduciary duty or that she overcame the presumption of survivorship. Therefore, the joint accounts passed to the survivor upon the death of original depositor and did not become part of decedent's estate.

Affirmed.

MILLER, C.J., and AMUNDSON, J., concur.

WUEST and HENDERSON, JJ., concur in result.

HENDERSON, Justice (concurring in result).

Majority writer cites his singular dissenting opinion in *Bol.* As the language in the *Bol* will is not present in the will before us, it is a totally inapposite citation. Perforce, the dissenting opinion cannot be authority because the two cases have different pillars. In reading over the briefs herein, I note that neither party cited or relied upon *Bol.* I am convinced that the trial judge made a decision, founded upon past precedent, and agree that this Court should affirm the decision. Interweaving inapposite authority, consisting of approximately 300 words in a footnote, seems to prolong, unnecessarily, an otherwise sound legal journey.

WUEST, Justice, joins this special writing and I am authorized to so state.