VILLAGE OF BURNSVILLE v. WESTWOOD
COMPANY AND ANOTHER.
KENNETH STOCKE AND OTHERS v. WHITE
INVESTMENT COMPANY AND OTHERS.
H. K. PETERSON AND ANOTHER, INTERVENORS.

189 N. W. (2d) 392.

April 23, 1971—Nos. 42614, 42615.

*Van Valkenburg, Moss & Flaherty* and *Paul Van Valkenburg,* for appellants.

*Haverstock, Gray, Plant, Mooty & Anderson* and *James S. Simonson,* for respondents Westwood Company and White Investment Company.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Peterson, JJ.

NELSON, JUSTICE.

These appeals arise out of two actions begun in 1967, which were consolidated for trial and for appeal. One action was brought by the village of Burnsville and the other by some 90 property owners, all residents of Whitewood Addition in Burnsville, both seeking a judgment that a water supply system permit granted by the township of Burnsville on April 4, 1961, was of no legal effect.

The complaints alleged inadequacy of water service, excessive rates, an invalid assignment of the operating rights of the system under the permit, and insufficiency of the performance bond which was put up by the system's operators. The ultimate relief demanded was that the permit be declared forfeited, that title to the waterworks and its real and personal property be conveyed to the village of Burnsville without cost, and that damages be recovered.

Named as defendants in both actions are Westwood Company, a real estate development corporation which owned some 145 lots in Whitewood Addition to Burnsville, and Whitewood Water Company, a corporation set up to construct and operate the water system serving the residents of Whitewood Addition under the authorization of the aforementioned permit and an easement to use the streets for water mains and other equipment. The two corporations were wholly owned subsidiaries of White Investment Company, a mortgage and investment banking company

which was owned by members of the White family up to 1967 and which was also named as a defendant in the second action.

It appears that on January 15, 1962, Whitewood Water Company assigned to Westwood Company its interest in the permit and easement granted by the town board, and on November 15, 1962, Westwood acquired land upon which to build a waterworks. Subsequently, Westwood built the waterworks and owned and operated the water system until December 30, 1966, when Westwood conveyed it back to Whitewood.

Intervenors, H. K. and Dorothy R. Peterson, had been clients of White Investment Company since 1952. They used the company and its president, R. H. White, a long-time personal friend, as their agent to invest in real estate mortgages and contracts for deed. White Investment had complete discretion in selecting and managing intervenors' investments, and these investments were made without consultation with the Petersons. Intervenors also customarily left with White Investment blank documents, such as deeds, assignments, and satisfactions, signed in advance, so that a title could be conveyed or a mortgage satisfied without any participation on their part. Annually, intervenors received a prepared statement of all investments made by White Investment for them, which consisted of a profit and loss statement, but which did not identify any specific assets.

On December 30, 1964, White Investment Company, without consulting intervenors, invested $75,000 of their funds in the Westwood Company's water supply system and its property. This investment was secured by Westwood's promissory note for $75,000, a mortgage deed, and a chattel mortgage on the equipment delivered to White Investment Company as agent for intervenors.

On February 5, 1965, White Investment wrote to the Petersons enclosing the 1964 annual statement, and after commenting on intervenors' 1964 investments, R. H. White stated:

"Your account now includes more mortgages than ever before. This includes one very interesting mortgage on the water system

in our land development area South of the Minnesota River, your mortgage being $75,000.00 at 7%, payable in installments, of course, secured by the water system itself and the revenues from the sale of water to the residents."

R. H. White died June 25, 1965, and his son, R. J. White, became president of White Investment Company, Westwood Company, and Whitewood Water Company. It was later decided by the White family to sell to a corporation known as W. G. C. and Associates the outstanding stock of White Investment, Westwood, and four other corporations owned by the Whites, but not the Whitewood Water Company. The stock purchase agreement between the Whites and W. G. C. and Associates, dated December 16, 1966, provided that the water system held by Westwood would be assigned to Whitewood Water Company, that the waterworks would be valued at zero, and its mortgage liability would also be valued at zero, conditioned on the mortgage liability being discharged against Westwood. If the mortgage liability were not discharged, the book value of the stock in the corporations was to be reduced by the amount of principal and accrued interest of the mortgage liability.

On December 22, 1966, White Investment wrote a letter to intervenors, stating:

"Dear Mr. and Mrs. Peterson:

"One of your accounts is a mortgage on the water system in Burnsville owned by Westwood Co., which has been in force since the end of 1964. The water system was originally owned by Whitewood Water Company, a corporation we established for that purpose in 1961 when the Town granted the permit. Later that year Burnsville suggested that until the system has been in operation for a reasonable period, they would prefer to have Westwood Co., the land developers, hold the permit, later to be reassigned to Whitewood Water Company.

"With over 100 of 140 lots now sold, we are in the process of selling the remaining equity in Westwood Co. and reassigning the water system to Whitewood Water Company, which will as-

sume the mortgage. In order to complete the transfer, we need to discharge Westwood Co. from the mortgage liability at the same time as it is assumed by Whitewood. The enclosed [form] should be signed where I've indicated, and it will be put into effect with the transfer from Westwood to Whitewood when the latter assumes the mortgage.

"Very truly yours,

"WHITE INVESTMENT COMPANY, INC.

"R. J. White, President"

The letter enclosed a document entitled "Release Agreement," which intervenors executed and returned to White Investment Company, who then delivered it to Westwood. Westwood then conveyed its warranty deed to the real property of the water system together with all easements and other rights in real estate that it held on assignment from Whitewood Water Company back to Whitewood on December 30, 1966. On January 2, 1967, Westwood and Whitewood entered into an agreement whereby Westwood would receive 10 percent of gross water revenues collected for operating the water system for Whitewood.

In June 1967 Whitewood began to default in its payments to intervenors, and in July the village of Burnsville and the residents of Whitewood Addition commenced these actions to cause the permit and easements to be forfeited and the water system to be conveyed to Burnsville.

The Petersons were granted leave to intervene in both actions. They sought foreclosure of their mortgages and a money judgment against the Westwood Company for the deficiency. As a defense Westwood claimed that intervenors had released Westwood from such liability. Intervenors alleged that White Investment Company, acting both as their agent and as agent for Westwood in procuring the release, committed breach of fiduciary duty, misrepresentation, and concealment of material facts, which, if known, would have resulted in intervenors' refusing to execute the release, and that such fraud and concealment were chargeable to Westwood so as to nullify the release.

All issues in these actions were disposed of by stipulation except the validity of the release executed by intervenors. The mortgages held by intervenors on the water system were forclosed, resulting in a deficiency claim in excess of $31,000.

The issue of the validity of the release agreement between intervenors and defendant Westwood Company was tried without a jury, and the court held the release valid, directing judgment be entered for defendant Westwood. Thereafter, it denied intervenors' motion for amended findings or for a new trial and they appeal.

The following issues are before this court: (1) Are the findings of the trial court so clearly erroneous as to require reversal by this court? (2) Did the trial court correctly exclude certain testimony by intervenors which purported to show their understanding of statements made to them by White Investment Company, and to show their reliance thereon? (3) Do the trial court's findings of fact and conclusions of law comply with Rule 52, Rules of Civil Procedure, as to sufficiency?

■ In refusing to nullify the release agreement, the trial court found that intervenors had executed a release of a mortgage to respondent Westwood Company on December 30, 1966; that on that date the stockholders of Westwood were the same as White Investment Company and Whitewood Water Company; that intervenors were aware of the interlocking stockholdings among the three corporations; that White Investment Company was acting as agent for intervenors, Westwood, and Whitewood Water Company with the knowledge and consent of all parties; and that despite the fact that intervenors were not advised of the assets of Westwood Company by White Investment Company at that time, White Investment Company did advise them that Westwood was being disposed of and the water system was being transferred to Whitewood Water Company and Westwood's other assets were being sold. The court concluded that Westwood should have judgment.

In its memorandum attached to the findings, the trial court

stated the main issue to be whether intervenors had full knowledge and had consented to the dual agency of White Investment Company. It concluded from the evidence that intervenors knew that White Investment Company, through R. J. White, was acting for all the corporations at the time the release was being prepared; that White Investment had not failed to disclose any information necessary for intervenors to make an informed decision as to whether or not to execute the release; and therefore it had properly discharged its duty as a dual agent.

Intervenors allege numerous instances of misrepresentation and concealment on the part of White Investment, which, they argue, invalidate the release agreement. They also allege constructive fraud on the part of White Investment because of its breach of fiduciary duties that it owed to them. They aver that White's dual agency and self-dealing constitute this constructive fraud.

A search of the record discloses only tenuous evidence for the trial court's finding that intervenors knew that White Investment Company was acting as agent for all parties and of the interlocking nature of all the corporations and consented to this multiple agency.

What the trial court does not consider to any extent in either its findings or its memorandum is the issue of White Investment Company's self-dealing. Even if all parties involved in the release agreement were aware of and consented to the agency of White Investment Company, which is not clearly shown, White breached its fiduciary duty to intervenors by not disclosing fully and honestly the reason for the release of respondent Westwood Company from mortgage liability to intervenors. In its letter of December 22, 1966, White stated that it merely was "in the process of selling the remaining equity in Westwood Co. and reassigning the water system to Whitewood Water Company, which will assume the mortgage." What the letter did not disclose was the purchase agreement entered into 6 days earlier, which agreement provided that if the White family could pro-

cure a release of Westwood Company on its liability to intervenors based on the note and mortgages, the White family would receive as additional consideration for the sale of their corporations an amount equal to the then mortgage liability of approximately $71,000, including default interest. Upon receipt of the release, Westwood assigned the water system to Whitewood Water Company, but entered into an operating agreement whereby it would operate the water system for Whitewood for 10 percent of the gross water revenue, a fact which also was not disclosed to intervenors.

As agent for intervenors, White Investment Company was bound to act solely for their benefit in all matters connected with the agency and was required to exercise the utmost good faith toward them. Doyen v. Bauer, 211 Minn. 140, 300 N. W. 451; Bentson v. Ellenstein, 215 Minn. 376, 10 N. W. (2d) 282. In the instant case, the agent placed itself in a position where its duty and interest conflicted, and which allowed the White family to make a profit at the expense of intervenors. This court has held that it is the duty of an agent to communicate to his principal all facts of which he has knowledge which might affect the principal's rights or interests. Doyen v. Bauer, *supra;* Boulevard Plaza Corp. v. Campbell, 254 Minn. 123, 94 N. W. (2d) 273. 8 Dunnell, Dig. (3 ed.) § 3833, states:

"* * * Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relationship, whereby one in whom confidence was reposed, or who possessed controlling influence over the other, obtained benefits without consideration, or for an inadequate consideration. The onus is on a person obtaining such benefits to show that he acted righteously."

We are bound to reach the conclusion that the trial court committed manifest error in finding that there was no breach of fiduciary duty on the part of the White Investment Company. The record clearly reveals self-dealing and a failure on the part

of White Investment Company, as agent, to disclose all necessary facts and knowledge of dealings concerning the release, to which intervenors trustingly attached their signatures. It follows that White Investment's constructive fraud in breaching its fiduciary duty to intervenors and engaging in self-dealing allows intervenors to avoid the release. White Investment was acting as agent on behalf of respondent Westwood Company; accordingly, the fraud is also imputed to Westwood.

"* * * Where, after learning of the fraud, a principal retains the benefits of a transaction consummated for him by an agent as the result of a fraudulent representation, he takes the benefits subject to the taints under which they were obtained." Swanson v. Domning, 251 Minn. 110, 116, 86 N. W. (2d) 716, 721.

■ Intervenors argue that the trial court erred by excluding evidence of their understanding of and reliance upon White Investment's representations. Specifically, these instances of exclusion pertain to questions asked by intervenors' counsel of H. K. Peterson about statements in the letter of December 22 and Mr. Peterson's reactions to them.

In Witzig v. Philips, 274 Minn. 406, 412, 144 N. W. (2d) 266, 270, this court stated:

"It is well-established law that the defrauded party may testify directly as to the effect of the representations on his mind and whether or not he acted in reliance upon them."

It was error for the trial court to exclude Mr. Peterson's testimony as to his state of mind or knowledge having to do with the representations in the letter.

In addition we conclude that the findings of the trial court in the instant case are incomplete. Although intervenors did not present sufficient evidence at the trial to prove actual fraud or really raise it as an issue as they do here on appeal, their argument that the findings regarding constructive fraud are uncertain, indefinite, and incomplete has merit. There was no finding as to when and how they consented to White Investment's double

agency, nor any finding as to self-dealing, knowledge of self-dealing, or consent thereto. Also, there are no findings as to the facts of which White Investment had knowledge and whether they ever disclosed them to intervenors. The findings are insufficient considering the nature and complexities of this case.

The order appealed from is reversed and judgment is ordered in favor of intervenors.