Ruth N. CARLSON, Appellant,

v.

Roy CARLSON, et al., Respondents,

First Federal Savings and Loan Association, Defendant.

No. C4–84–1029.

Court of Appeals of Minnesota.

March 5, 1985.

Kent E. Nyberg, Chalupsky, Nyberg & Hawkinson, Ltd., Grand Rapids, for appellant.

Jon A. Maturi, Grand Rapids, for respondents.

Heard, considered and decided by FOLEY, P.J., and LANSING and NIERENGARTEN, JJ.

## OPINION

LANSING, Judge.

Ruth Carlson appeals from a judgment determining that she and her brother, Roy Carlson, are joint owners of funds deposited by their mother, Anna Carlson, during Anna Carlson's lifetime, in two bank accounts at First Federal Savings and Loan Association. Ruth Carlson argues that her brother was made a party to the accounts solely to facilitate his payment of Anna's bills and that Anna intended Ruth to be the sole owner of the accounts after Anna's death. We reverse and remand.

## FACTS

Anna Carlson lived in Goodland, Minnesota, until her death in October 1983 at age 90. Eight sons lived nearby. Her daughter, Ruth Carlson, lived in the Twin Cities area. For an undetermined number of years Anna had three accounts at Grand Rapids State Bank. All three were joint accounts with Ruth, although Anna provided all the funds in them.

In May 1983 Anna was hospitalized for a short time. She mentioned to her son, Roy Carlson, that Ruth's name was on her bank accounts, so Ruth could withdraw money to pay Anna's bills if necessary.

In July Ruth and Roy decided independently that it would be convenient for Roy to have access to Anna's accounts because he lived nearby and helped Anna pay her bills. They went to the Grand Rapids State Bank and, without Anna's knowledge, transferred two of the accounts to First Federal Savings and Loan Association of Grand Rapids. Approximately $14,000 was placed in a certificate of deposit in the names of Anna, Ruth, and Roy; about $5,000 was placed in a savings account in their three names. Roy signed Anna's name on the signature cards. Both accounts were joint accounts with rights of survivorship. The account remaining at Grand Rapids State Bank held about $3,000; Ruth testified Anna intended this to be used for her funeral expenses.

Anna died in October without leaving a will. Her estate consisted of the three bank accounts, personal clothing, and furnishings. Roy paid for her funeral expenses, about $3,000, out of the First Federal savings account. He then removed Ruth's name from both of the First Federal

accounts. Ruth took possession of the account at Grand Rapids State Bank as the surviving party.

Ruth sued Roy and First Federal, claiming she was entitled to all the money in the First Federal accounts because Roy's name was only on the accounts for the purpose of paying Anna's bills. The trial court enjoined First Federal from allowing any further withdrawals or transfers of the accounts and, after trial, ordered the bank to divide the money equally between Ruth and Roy. The ownership of the Grand Rapids account was not before the trial court.

## ISSUE

Who is entitled to the funds in the two First Federal accounts?

## ANALYSIS

■ The trial court apparently relied on the presumption of joint ownership under Minn.Stat. § 528.05 in dividing the funds equally between Ruth and Roy. That statute, based on Uniform Probate Code § 6–104(a) (1974), provides:

> Sums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention, or there is a different disposition made by a valid will * * *. If there are two or more surviving parties, their respective ownerships * * * shall be in proportion to their [net contributions] augmented by an equal share for each survivor of any interest the decedent may have owned in the account immediately before his death; and the right of survivorship continues between the surviving parties.

Minn.Stat. § 528.05(a) (1982); *see generally* Note, *The "Poor Man's Will" Gains Respectability: Using the Minnesota Multi-Party Accounts Act*, 1 Wm. Mitchell L.Rev. 48, 62–63 (1974). Any multiple-party account may be paid, on request, to any one or more of the parties. Financial institutions are not required to establish par-

ties' net contributions before paying out the funds. *See* Minn.Stat. § 528.09 (1982).

■ Before the presumption of joint ownership arises, however, there must be a validly created joint account. *In re Estate of Mehus*, 278 N.W.2d 625, 634 (N.D.1979) (interpreting a similar provision codified at N.D.Cent.Code § 30.1–31–04(1)). The trial court specifically found that the purpose of transferring the two accounts to First Federal was to gain a higher interest rate and to permit Roy to pay Anna's bills. Although this may have been Roy's or Ruth's intent, neither of them had an ownership interest in the money before Anna's death. *See* Minn.Stat. § 528.04(a); *Hefner v. Estate of Ingvoldson*, 346 N.W.2d 204, 207 (Minn.Ct.App.1984) (a party who has contributed nothing to funds deposited in a joint account has no right of possession before the depositor's death). The record is clear that Anna did not give her permission to change banks or to add Roy's name to her accounts before those changes were made.

Although the testimony conflicted, the trial court made no findings on whether Anna consented to the changes after the fact. If an agency relationship was created between Roy and Anna, the extent of that agency must be ascertained to determine the validity of the establishment of the First Federal accounts. Furthermore, if Roy became Anna's agent, his conduct must be evaluated in light of his duty as an agent.

■ One acting in a fiduciary capacity must exercise the utmost fidelity toward the principal, *Christensen v. Redman*, 243 Minn. 130, 136, 66 N.W.2d 790, 794 (1954), and owes the principal a duty of full disclosure, *Village of Burnsville v. Westwood Co.*, 290 Minn. 159, 166, 189 N.W.2d 392, 397 (1971). An agent cannot profit from the subject of the agency without the principal's consent, freely given after full disclosure of any facts that might influence the principal's judgment. *Schepers v. Lautenschlager*, 173 Neb. 107, 119, 112 N.W.2d 767, 774 (1962). Furthermore,

Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relationship, whereby one in whom confidence was reposed * * obtained benefits without consideration, or for an inadequate consideration. The onus is on a person obtaining such benefits to show that he acted righteously.

*Village of Burnsville v. Westwood Co.*, 290 Minn. at 166, 189 N.W.2d at 397; *see also Winget v. Rockwood*, 69 F.2d 326, 331 (8th Cir.1934) (transactions between a principal and agent whereby the agent derives advantage beyond legitimate compensation will be set aside "if there be any ground to suppose that [the agent] has abused the confidence reposed in him") (quoting *Ralston v. Turpin*, 129 U.S. 663, 674–75, 9 S.Ct. 420, 424–425, 32 L.Ed. 747 (1889)).

The presumption of ownership by surviving parties to a joint account arises only when the account is validly created. *See Estate of Mehus*, 278 N.W.2d at 634. Although the trial court found joint ownership, no determination was made on whether the accounts were validly created. We therefore remand for findings consistent with this opinion on whether Anna authorized Roy to act for her as an agent and, if so, the scope of that agency and whether Roy fulfilled his fiduciary duty as an agent. If Roy was not authorized to act as Anna's agent, or if Roy breached any fiduciary duty to her, the transactions must be set aside, and ownership of the funds in the First Federal accounts must be determined from their status before these changes were made—that is, as they were held at the Grand Rapids State Bank by Anna and Ruth as joint owners.

## DECISION

Reversed and remanded.