H. Richard HOPPER as Special Administrator of the Estate of Albert Darsow, Respondent,

v.

Hazel RECH, Appellant.

No. C8-85-623.

Court of Appeals of Minnesota.

Oct. 15, 1985.

Review Denied Dec. 30, 1985.

J. Richard Hopper, Hastings, James W. Rockwell, Minneapolis, Benjamin M. Kail, St. Paul, for respondent.

Carl A. Swenson, St. Paul, for appellant.

Heard, considered and decided by HUS-PENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

This is an appeal from the trial court's order directing that the balances in several multi-party accounts held by decedent Albert Darsow and appellant Hazel Rech should be returned to the probate estate. Appellant disputes the trial court's findings that: 1) some of the accounts were not properly established, 2) the respondent showed by clear and convincing evidence that decedent did not intend appellant to have survivorship rights, and 3) even if the decedent did intend appellant to have survivorship rights, the intent was the product of the undue influence of appellant on decedent. We affirm.

## FACTS

Albert Darsow (decedent) died on July 18, 1981, at the age of 91. Decedent, a farmer, had no family except for several nieces and nephews, including appellant. Except for the last six months of his life when he lived in a nursing home, decedent lived alone on his farm in Mendota Heights.

Appellant Hazel Rech is 72 years old. She knew decedent all her life, and cared

for him for the last several years of his life, beginning in 1968. Appellant performed an uncommon service for her uncle, showed concern for his welfare, and benefited him both personally and financially. In particular, appellant encouraged decedent to see an attorney in 1968, after decedent had entered into a purchase agreement to sell his farm for $40,000. The attorney was able to get a court order declaring the purchase agreement null and void as having been obtained by undue influence. Appellant then worked with a real estate agent and ultimately helped decedent sell the property for $300,000 in 1970. From 1968 until his death, appellant also visited decedent at least every other day, prepared his meals, helped him with work around the house and the farm, and kept his financial records. Appellant maintained a calendar during these years that documented each contact with decedent and the nature of the contact.

Decedent executed a will in 1970, naming appellant as executor and providing her with a bequest of 25% of the residue. The will gave each of two other nieces bequests of 12.5%, and the remainder was divided among decedent's other nieces and nephews. This will was found to be valid in a will contest case in 1982.

In 1974, decedent opened a money market certificate account at Minnesota Federal Savings & Loan. In 1978, he opened a savings account at the same institution. Both of these accounts were established in decedent's and appellant's names as joint tenants. In 1981, appellant made several changes in some of decedent's other various bank accounts. She made these changes after decedent had moved to a nursing home. Appellant testified at trial that all transactions that she made in 1981 were for the primary purpose of obtaining higher interest rates. She put all new accounts in the names of herself and decedent as joint holders, except for one that was in her name alone and another that was in decedent's name in trust for appellant. Appellant testified that decedent told her that her name should be on the accounts, but that he never indicated whether his intent was to establish survivorship rights for her or if he put the amounts in both names only for convenience. Decedent was the sole contributor of the money contained in the accounts.

Following decedent's death, appellant claimed ownership of all funds from decedent's bank accounts, pursuant to Minn. Stat. § 528.05(a) (1982), which says sums remaining on deposit at the death of a party to a joint account belong to the surviving party. The total amount contained in the accounts at decedent's death was $220,395.38. By virtue of her ownership claim, appellant received 81% of decedent's estate rather than the 25% provided for her in his will.

Respondent H. Richard Hopper, special administrator for the decedent's estate, brought this action for return of the funds to the probate estate, alleging undue influence by appellant on decedent. There were a total of nine accounts involved in the challenge. The trial court analyzed each of the accounts and concluded that all but one belonged to the probate estate.

The court first found that four of the accounts had not been properly established and were therefore the property of the estate. Alternatively, the court found that even if the four accounts had been properly established, clear and convincing evidence showed that decedent had no intent to provide for survivorship, and so the funds were the property of the estate under the provisions of Minn.Stat. § 528.05(a). Additionally, the trial court found that even if decedent had intended survivorship, that intent was the product of appellant's undue influence on decedent, such that the intent would have no effect.

For three of the accounts, the trial court found that decedent did not intend survivorship, and even if he had, that intent would have been the result of appellant's undue influence.

For the account that was in appellant's name only, the trial court found that the funds belonged to the estate because appellant did not carry her burden of showing

by clear and convincing evidence that decedent intended to make a gift of the account to her. Alternatively, the court found that any donative intent that decedent might have had would have been the product of appellant's undue influence on him, thus making any such intent ineffective. Appellant does not challenge the trial court's findings as to this account.

Finally, the court found that the ninth account had been properly established. *See* Minn.Stat. § 528.15 (contains language that must be included in order to give rise to a conclusive presumption of decedent's intent to create a survivorship account). This was a checking account containing $825.39, and the trial court awarded that amount to appellant.

Appellant divides her challenge to the trial court's findings and conclusions into two parts. She first contends that the trial court's findings on the issues of survivorship intent and undue influence were clearly erroneous. Secondly, she argues that since the issue of proper establishment of the accounts was not made an issue at trial, the trial court erred by acting on it.

## ISSUES

1. Did the trial court clearly err in finding that clear and convincing evidence showed decedent had no intent to provide appellant with rights of survivorship?

2. Did the trial court clearly err in acting on the issue of proper establishment of decedent's accounts under Minn.Stat. § 528.02?

## ANALYSIS

The standard of review on the trial court's findings of fact is determined by rule:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01.

1. The clearly erroneous standard applies to the trial court's findings that the decedent had no intent to provide appellant with survivorship rights to decedent's bank accounts. In addition, upon review of these findings, we must take into account the requirement that the respondent show by clear and convincing evidence that decedent lacked this intent. *See* Minn.Stat. § 528.05(a) (1984).

■ If an account contains the statutory language of intent to establish survivorship rights to joint or multi-party accounts, that language "shall be conclusive evidence of the intent of decedent to establish a survivorship account * * *." Minn.Stat. § 528.-15. Only one of the accounts at issue before the trial court contained this language, and the court accordingly awarded the funds in that account to appellant. Where the language of Minn.Stat. § 528.15 does not appear, Minn.Stat. § 528.05 provides that the decedent is presumed to have established a survivorship account, but that presumption will be overcome if clear and convincing evidence of a contrary intention is shown.

■ No evidence was presented at trial that showed decedent intended to establish survivorship rights for appellant; thus, the trial court relied on respondent's evidence showing that decedent lacked the requisite intent. The trial court found that appellant was aware of the significance of survivorship accounts, but appellant testified that neither she nor anyone else ever discussed the issue with decedent. The only evidence regarding the addition of appellant's name to the accounts was her testimony that decedent told her he wanted her name on them, but that he did not give her any explanation for this decision.

There was significant evidence that decedent had a limited ability to understand the details of financial matters and that he relied heavily on other people as well as appellant to handle those matters for him. For example, appellant testified that when she reviewed over 1500 personal checks that decedent had written over the years, she did not find any that decedent had filled out himself. Rather, his custom was

to have the store clerk fill in the amount and other information and he would only sign the check. The example of his entering into a contract to sell his land for a little over one quarter of the price that appellant eventually helped him get also shows his lack of sophistication and inability to intelligently handle his finances.

In addition, decedent's will, executed before any of these accounts were changed to include appellant's name as joint account-holder, left 25% of his estate to appellant. The will's provisions show decedent intended to reward appellant handsomely for the care and attention that she had given him; they also show that he intended that she receive 25% of his estate, not 81%.

All of these evidentiary items support the finding that decedent wanted appellant's name to be included on the accounts only so that she could conveniently manage them for him and not to create survivorship rights in her.

Even if this evidence were not enough to constitute clear and convincing evidence of decedent's lack of intent, this court recently held that the presumption of ownership by surviving parties to a joint account does not arise if the account was created through a violation of a fiduciary duty. *In re the Estate of Nordoff,* 364 N.W.2d 877, 879 (Minn.Ct.App.1985); *Carlson v. Carlson,* 363 N.W.2d 803, 805–06 (Minn.Ct.App.1985). One acting in a fiduciary capacity must exercise the utmost fidelity toward the principal and owes the principal a duty of full disclosure. *Nordoff,* 364 N.W.2d at 879; *Carlson,* 363 N.W.2d at 805 (citing *Christensen v. Redman,* 243 Minn. 130, 136, 66 N.W.2d 790, 794 (1954) and *Village of Burnsville v. Westwood Co.,* 290 Minn. 159, 166, 189 N.W.2d 392, 397 (1971)).

The trial court did not determine whether appellant was in a fiduciary relationship to decedent. In *Nordoff,* however, the trial court found a fiduciary relationship where the decedent and appellant were first cousins and appellant merely assisted decedent in paying some of her bills during a one month period between decedent's hospitalization and her death. The relationship in *Nordoff* was not as lengthy nor as dependent as the relationship between decedent and appellant in this case. Here, therefore, we believe that the trial court could have found that a fiduciary relationship did exist between decedent and appellant and that by failing to fully disclose the effects of her actions with regard to decedent's bank accounts, appellant breached that fiduciary duty.

2. The trial court correctly began its analysis of the rights to the accounts by considering if they were valid accounts. We have previously decided that "[b]efore the presumption of joint ownership arises, however, there must be a validly created joint account." *Carlson,* 363 N.W.2d at 805. The trial court found that four of decedent's accounts had not been properly established because they lacked signature cards from decedent.

Appellant contends that the issue of the validity of the accounts was not before the court, as it was not specifically raised in the pleadings or at trial. Since we have already upheld the trial court on the basis that it was not clearly erroneous in finding that decedent lacked the intent to create survivorship rights in appellant, the determination of this additional issue is not important in this case. Nevertheless, it was the first basis upon which the trial court made its determination, and appellant has made it her primary contention on appeal.

Rule 15.02 of the Minnesota Rules of Civil Procedure provides that issues tried by implied consent shall be treated as if they had been raised in the pleadings. This court recently stated:

> Litigation by consent is not to be applied artificially, but rather is to be implied where the novelty of the issues sought to be raised is reasonably apparent and the intent to try these issues is clearly indicated by the failure to object or otherwise.

*Hutton v. Bosiger,* 366 N.W.2d 358, 361 (Minn.Ct.App.1985) (quoting *Roberge v. Cambridge Cooperative Creamery Co.,*

243 Minn. 230, 235, 67 N.W.2d 400, 404 (1954)), *pet. for rev. denied* (Minn. June 27, 1985).

▮▮▮ Since the presumption of ownership by surviving parties to a joint account arises only when the account is validly created, the determination of validity in this case was a necessary prelude to a decision on the presumption of ownership issue. We also note that in *Carlson*, this court remanded because, while the trial court there found joint ownership, it failed to first determine whether the accounts involved were validly created. *Carlson*, 363 N.W.2d at 806. The trial court in the present case properly took this step. Moreover, appellant as well as respondent introduced evidence pertaining to the validity of the accounts, and appellant did not object to any of the offered evidence. Appellant has not shown by the additional documents provided on appeal that she was prejudiced in any way by the court's decision to consider the issue. The trial court did not err in deciding that the accounts were not validly established.

The trial court's judgment is upheld by our determination that its findings were not clearly erroneous. Thus, we do not reach the issue of undue influence, which was yet another basis for the trial court's judgment.

## DECISION

The trial court's findings and conclusions that decedent's accounts were not validly created and that decedent lacked the requisite intent to create survivorship rights in appellant were not clearly erroneous.

Affirmed.