**HARRY N. RAY, LTD., Respondent,**

**First National Bank of Pine City, Defendant and Third Party Plaintiff, Respondent,**

v.

**Sheldon NASCENE, Third Party Defendant, Appellant.**

No. C6–85–1155.

Court of Appeals of Minnesota.

Jan. 7, 1986.

John J. Sausen, Bloomington, for appellant.

Harry N. Ray, Bloomington, for Harry N. Ray, Ltd.

Patrick T. O'Neil, Cambridge, for First Nat. Bank of Pine City.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant Sheldon Nascene appeals from a portion of the trial court's award of $13,777.99 to respondent First National Bank of Pine City (Bank), and from the trial court's determination that the Bank is entitled to indemnification from Nascene on a loan the Bank made to a third party. On appeal, Nascene argues (1) that $6,595.49 of the trial court's award of $13,777.99 is not supported by the evidence or the trial court's findings of fact; (2) that the agreement between the Bank and Nascene was ambiguous and (3) that parole evidence should have been admitted to explain the agreement; and (4) that the trial court did not follow accepted rules of construction in construing the agreement. We reverse and remand.

## FACTS

Sheldon Nascene was president and part-owner of the Bank. On September 30, 1976, he resigned as president and sold his interest in the Bank.

While Nascene was Bank president he approved certain loans to Thomas Hines and Roger Kelly. On September 12, 1977, after Nascene had resigned, the Bank renewed the loans that Nascene had initially approved for Hines and made a new loan to him for $40,000. Hines and Kelly subsequently defaulted on their loans. The Bank then hired respondent attorney Harry Ray to commence collection procedures. Ray's work on these collection proceedings began in April 1978 and continued until August 1980.

On December 8, 1979, Nascene entered into a written agreement with the Bank. The agreement appears to provide that if the Bank was unsuccessful in collecting the loans from Hines, Nascene would indemnify the Bank. In furtherance of this agreement, Nascene deposited a sum of money in an account at the Bank. Nascene also agreed to indemnify the Bank for expenses incurred in pursuing collection of the loans from Hines. The agreement stated that Hines had filed a petition in bankruptcy in early 1979.

Pursuant to this agreement, Nascene paid $4,597.61 to Ray on Ray's total billing of $18,375.60. At the request of Nascene and the Bank, Ray had separated the expenses incurred in collecting the Hines and Kelly loans. The $4,597.61 represented that portion of Ray's services performed in collecting the Hines loans after Nascene and the Bank executed the December 8, 1979, agreement.

A dispute then arose between Nascene and the Bank about how Ray's remaining bill should be apportioned. Ray filed a summons and complaint against the Bank to collect the remaining fee of $13,777.99 ($18,375.60 minus $4,597.61). Before trial the Bank paid Ray $6,595.49, the cost of legal services to collect on the Kelly loan. At trial the parties stipulated that the amount outstanding at that time was $7,182.50. This was the amount of legal fees incurred in collecting the Hines loans prior to the December 8, 1979, agreement.

The Bank filed a third party complaint against Nascene claiming that under the December 8, 1979, agreement Nascene had agreed to indemnify the Bank. The Bank sought judgment against Nascene for all sums adjudged against the Bank in favor of Ray. Nascene counterclaimed to recov-

er $40,000 which he alleged the Bank had improperly withdrawn from the account Nascene established to cover the Hines loans. The $40,000 was withdrawn to cover a loan that the Bank made to Hines after September 30, 1976, the date Nascene resigned as president and sold his interest. Nascene claimed this loan was not covered by the December 8, 1979, agreement. Upon issuance of the trial court's findings of fact, conclusions of law and order for judgment, Nascene moved for "revision of the Order" asking, inter alia, that "the correct figure that Nascene should be ordered to pay the Bank should be $7,182.50." That motion was denied.

## ISSUES

1. Did the trial court err in finding that appellant owed respondent Bank $13,777.99 under the agreement?

2. Was the December 8, 1979, agreement between appellant and respondent Bank ambiguous?

## ANALYSIS

### I.

Nascene argues that the trial court's conclusion that Nascene owed the Bank $13,777.99 pursuant to the agreement regarding loan collection fees was not supported by its findings of fact and was contrary to the evidence presented. Although the trial court did not specify what costs were included in the $13,777.99 award, it is clear that this amount represents the $7,182.50 outstanding on Ray's bill for collection of the Hines loans plus the $6,595.49 the Bank had previously paid to Ray for collection of the Kelly loan. Nascene did not preserve the issue of whether the trial court properly awarded the $7,182.50, nor has he attempted to argue that issue on appeal. Therefore, we address only whether the remaining $6,595.49 was properly awarded. We conclude it was not.

The trial court's apparent conclusion that Nascene owed the Bank the costs of collecting the Kelly loan ($6,595.49) is not supported by its findings of fact. Finding

of fact III states that the December 8, 1979, agreement covers:

attorneys fees and costs to collect certain loans that had been made by [Nascene] when he was an officer of the Bank and monies loaned to [sic] the [Bank] to Hines after September 1, 1976.

In addition, Finding VIII states that Nascene and the Bank agreed to engage legal counsel to pursue collection of the Hines loans. Nowhere does the trial court find that Nascene agreed to pay the costs of collecting the Kelly loan.

■ Further, the evidence itself does not support the award of the Kelly loan collection fees. At trial the issue of whether Nascene had agreed to indemnify the Bank for collection of the Kelly loan was never raised and the record contains no testimony on that issue. Also, the December 8, 1979, agreement makes no mention of Nascene's responsibility for this expense. While the first portion of that agreement refers to loans that Nascene made to both Kelly and Hines, the covenant portion specifically states:

NOW, THEREFORE, the parties hereto mutually covenant and agree as follows:

\*   \*   \*   \*   \*   \*

4. That Nascene agrees to indemnify the Bank for such amounts as the Bank has expended, incurred or will expend or incur in the future, pursuing its remedies against Hines in the event no recovery is made against Hines.

No mention is made of the Kelly loan in this portion of the agreement.

This court will not disturb a trial court's findings unless they are clearly erroneous. Minn.R.Civ.P. 52.01. A finding is clearly erroneous if it is without substantial evidentiary support. *See In re Estate of Balafas*, 293 Minn. 94, 198 N.W.2d 260 (1972). In the present case, the trial court's conclusion that Nascene owed the Bank the $6,595.49 for collection of the Kelly loan was clearly in error because no evidence exists to support such a conclusion.

## II.

Nascene, in his counterclaim, sought recovery of the $40,000 the Bank had withdrawn from his account as indemnification for the loan the Bank made to Hines on September 12, 1977. The trial court, in denying Nascene's requested recovery, found the following clause of the December 8, 1979, agreement to be unambiguous:

> 1. That Nascene has deposited with the Bank certain moneys to indemnify said Bank against any and all loans of Hines.

The trial court construed this clause to mean that Nascene would indemnify the Bank for all loans made to Hines both while Nascene was president of the Bank and after he resigned.

The question of whether a contract is ambiguous is a question of law. *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982). A contract is ambiguous if the language can be given more than one interpretation. *Lamb Plumbing & Heating Co. v. Kraus-Anderson of Minneapolis, Inc.*, 296 N.W.2d 859, 862 (Minn.1980).

In the present case, the clause in question may appear unambiguous when read alone, but when read with the rest of the agreement the clause is susceptible to more than one plausible interpretation. The first portion of the agreement specifically refers to loans made to Hines prior to September 1976, but later in the agreement the language is less specific. The clause under consideration could be interpreted to mean any and all loans made to Hines while Nascene was associated with the Bank or any and all loans the Bank made to Hines at any time regardless of whether Nascene was associated with the Bank. It was error for the trial court to determine that the clause is unambiguous when these two possible interpretations exist. The court should have received extrinsic evidence to ascertain the intent of the parties. *See Midway Center Associates v. Midway Center, Inc.*, 306 Minn. 352, 237 N.W.2d 76 (1975).

Because we are remanding this case for the admission of parole evidence to determine which loans the parties actually intended to include in the agreement, we need not reach Nascene's allegation that the trial court did not follow accepted rules of construction when it interpreted the December 8, 1979, agreement.

### DECISION

We reverse the trial court's award of $13,777.99 to respondent Bank and remand for entry of award in the sum of $7,182.50.

We reverse the trial court's decision that the December 8, 1979, agreement between appellant and respondent Bank was unambiguous and remand for the trial court to consider extrinsic evidence and determine the intent of the parties.

Reversed and remanded.