**Linda SYMICZEK, Appellant,**

v.

**Lillian COLICH, et al., Respondents.**

**No. C6–86–1263.**

Court of Appeals of Minnesota.

Feb. 3, 1987.

Keith M. Carlson, Lucas & Carlson, P.A., Duluth, for appellant.

James William Hunter, Rapoport, Wylde & Hunter, Minneapolis, for respondents.

Considered and decided by POPOVICH, C.J., and PARKER and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

This appeal is taken from an order denying appellant Linda Symiczek's motion for amended findings of fact or, in the alternative, a new trial. Appellant contends the trial court erred in determining appellant's name was properly removed from three joint savings accounts held by the deceased and replaced with respondent Lillian Colich's name because (1) respondents Lillian Colich and her husband abused a fiduciary relationship with the deceased and (2) the decedent was mentally incapable of validly removing appellant's name from the three certificates. We disagree and affirm.

## FACTS

Emily Colich died April 11, 1981. Prior to her death, Emily established three savings accounts with the St. Louis County Federal Savings and Loan Association in joint tenancy with her two daughters, re-

spondent Lillian Colich and Angeline Lukovsky. For over ten years the savings accounts remained in joint tenancy under Emily's sole control.

In 1980, appellant Linda Symiczek began assisting Emily in her banking and related financial affairs. Appellant is Emily's granddaughter and Angeline Lukovsky's daughter. Appellant and Emily maintained a close relationship. Appellant also regularly visited Emily and helped Emily with her grocery shopping and yard work. Late in 1980 and in 1981, Emily replaced respondent Lillian Colich's name with appellant's name on the three savings certificates. Although the changes were made at Emily's request, appellant actually went to the bank and made the transactions. Appellant did not notify respondent Lillian Colich that her name was being removed from the joint savings certificates.

During summer 1980, Emily became ill and was diagnosed as having stomach cancer. Angeline was also ill with cancer at this time. Respondent Lillian Colich began spending more time with her mother after learning of her mother's illness. Lillian had a somewhat strained relationship with Emily; however, Emily often relied on Lillian's husband respondent Steven Colich's financial advice after her husband died. Over the years, respondent Steven Colich assisted Emily in running the family grocery store and in converting the store into apartments. He also advised Emily on her business and financial matters and helped her prepare her income tax returns. On April 4, 1981, Emily gave respondent Steven Colich power of attorney to handle her business and banking affairs, which was never exercised.

On March 5, 1981, Emily was hospitalized. Appellant, respondent Lillian, and Angeline drove Emily to the hospital at this time. On March 6, 1981, Emily was discharged from the hospital and driven home by respondents and Angeline. Because of Emily's condition, respondents stayed with her for the weekend. On March 7, 1981, Emily stated she wanted to speak with respondent Steven Colich privately. During their conversation, Emily indicated that appellant's name had been placed on her savings certificates. Emily asked respondent Steven Colich to change the certificates to reflect the way they were originally established. Specifically, Emily requested respondent Steven Colich to delete appellant's name and replace it with respondent Lillian Colich's name. Since Emily made her request on a Saturday, respondent Steven Colich informed her that no changes could be made until Monday, March 9.

Early Sunday morning, March 8, 1981, Emily again became ill and was taken to the hospital by respondents. The emergency room doctor noted that Emily appeared awake and alert when admitted. During the day, Emily seemed concerned about respondent Steven Colich transacting the name changes on the savings certificates. On Monday, March 9, 1981, respondent Steven Colich acted upon Emily's request and obtained the necessary documents for Emily to sign. Respondent Steven Colich brought them to the hospital for Emily to sign. After Emily signed the signature cards, respondents drove to Angeline's home and obtained her signature. Appellant was aware of the signing and did not witness an attempt by respondents to unduly influence Emily. The savings accounts remained in joint tenancy between Emily, Angeline and Lillian until Emily's death.

After Emily Colich died on April 11, 1981, respondents made the funeral arrangements and paid the accounts. On May 22, 1981, appellant's mother Angeline died. Appellant then brought an action against respondents claiming respondents had a fiduciary relationship with Emily and used this relationship to unduly influence and fraudulently cause Emily to remove appellant's name from the savings certificates.

The trial court did not agree and held respondents did not occupy a fiduciary relationship with Emily and the name alteration was performed at Emily's request. The trial court further concluded appellant

failed to prove respondents unduly influenced Emily or fraudulently removed appellant's name from the certificates. Appellant moved for amended findings of fact or, in the alternative, a new trial. The trial court denied this motion stating that appellant was making the same arguments as those made during trial, and that the original findings issued were supported by the evidence. Appeal is made from the order denying post-trial relief.

## ISSUE

Did the trial court clearly err in finding that appellant's name was properly removed from the three savings certificates?

## ANALYSIS

1. In reviewing the trial court's findings of fact, this court is bound by Minn.R. Civ.P. 52.01:

Finding of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

We therefore apply the clearly erroneous standard to the trial court's findings that respondents did not occupy a fiduciary relationship with the deceased, that the joint tenancy was created at the deceased's request and that the deceased was aware of the significance of her actions.

2. An examination of the record indicates the trial court's findings of fact are not clearly erroneous. The record supports the trial court's determination that respondents did not occupy a fiduciary relationship with Emily. Although respondent Steven Colich performed many services for her, the record indicates he was not in a capacity to exercise any control over the three savings certificates. Emily established the certificates several years prior to her death and retained sole control over them. The certificates remained unchanged until a few months prior to her death. Both changes in joint tenancy were made at Emily's direction. The degree of control exercised by Emily and the age of the certificates suggests the respondents

and the deceased did not occupy a fiduciary relationship with respect to the savings certificates.

The record also supports the trial court's findings that Emily requested the joint tenancy changes and was aware of the consequences of her actions. She requested both joint tenancy alterations. Nothing in the record suggests the changes were made without the deceased's consent. *Cf. Carlson v. Carlson,* 363 N.W.2d 803 (Minn. Ct.App.1985) (joint accounts created without the deceased's knowledge or consent). Appellant even testified that respondents did not unduly influence Emily with respect to the changes made on the savings certificates.

Furthermore, it appears the deceased was aware of the consequences of her actions regarding the certificates. The trial court heard testimony indicating Emily was alert and lucid at the time the changes were made. This court must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01; *Hopper v. Rech,* 375 N.W.2d 538, 541 (Minn.Ct.App. 1985) *pet. for rev. denied* (Minn. Dec. 30, 1985). Emily was a fairly experienced business woman and aware of her personal financial affairs. Altering the names twice suggests she recognized the consequences of leaving a name on the certificate she did not desire.

Support for the trial court's findings of fact can be derived from the record. Given the strict standard of review, the trial court's decision must stand.

## DECISION

The trial court properly denied appellant's motion for amended findings of fact or, in the alternative, a new trial.

Affirmed.