**HARRY N. RAY, LTD., Plaintiff,**

v.

**FIRST NATIONAL BANK OF PINE CITY, third party plaintiff, Respondent,**

v.

**Sheldon NASCENE, third party defendant, Appellant.**

No. CX–86–1833.

Court of Appeals of Minnesota.

Aug. 4, 1987.

Adam E. Bridge, Parker, Satrom, O'Neil, Lindberg & Sauter, Ltd., Cambridge, for respondent.

John J. Sausen, Edina, for appellant.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and STONE *, JJ.

* Acting as judge of the Court of Appeals by ap-

## OPINION

FOLEY, Judge.

This case is before us for the second time. The first appeal involved a third-party action by First National Bank of Pine City (the Bank) against Sheldon Nascene for reimbursement of legal fees incurred by Harry N. Ray, Ltd. in collection of defaulted loans Nascene had originally approved while he was president of the Bank.

In *Harry N. Ray, Ltd. v. Nascene*, 379 N.W.2d 249 (Minn.Ct.App.1986), we held that Nascene's obligation to indemnify the Bank for fees incurred in collection of the second borrower's loan was not supported by the evidence or findings of fact. Judgment for the Bank was reversed and the case was remanded with directions to enter judgment in an amount stipulated to represent outstanding legal fees incurred in collection of the first borrower's loans. We further held that a written agreement between Nascene and the Bank was ambiguous with respect to Nascene's obligation to indemnify the Bank for loans renewed after his resignation as Bank president and that parol evidence was necessary to determine the intent of the parties.

Following remand, Nascene sought to amend the pleadings to include a claim that the Bank was negligent in failing to adequately pursue its collection remedies. The requests were denied. The trial court concluded that under the written agreement the parties intended that Nascene indemnify the Bank for all loans to the first borrower, regardless of his association with the Bank and that monies the Bank withdrew from an account to satisfy one of the loans was contemplated under the agreement. No post-trial motions were made. We affirm in part, reverse in part and remand.

## FACTS

During Nascene's tenure as Bank president, he approved certain loans to Thomas Hines and Roger Kelly. On September 30, 1976, Nascene resigned as president. On September 12, 1977, the Bank renewed the

pointment pursuant to Minn. Const. art. 6, § 2.

Hines loans. An additional $40,000 loan was also approved. F. William Johnson, a member of the partnership that purchased Nascene's controlling interest in the Bank, testified that he approved the additional $40,000 "capital injection" loan to Hines based on Nascene's assurances to commit the same amount from the State Bank of Carlos, a bank in which Nascene had an ownership interest.

In October 1978, pursuant to an informal agreement between Nascene and the Bank, Nascene withdrew an amount from his savings representing the exact principal and interest outstanding on the first Hines note and paid the Bank. He also withdrew $40,694.72 from his savings account, a sum representing the precise amount of principal and interest due on the capital injection loan and placed it into a Bank account. The Bank immediately transferred this sum to the State Bank of Carlos. Nascene testified that he agreed to pay these sums because he believed he "would be responsible for [the] loans."

On December 8, 1979, the parties reduced their informal agreement to writing. Attorney Harry Ray testified that, in accordance with Nascene's wishes, he drafted the document as an indemnification agreement rather than one reflecting direct payment of the notes in full. Had the agreement been drafted to reflect direct payment, the Bank would have lost the right to pursue collection efforts. In pertinent part, the agreement provided:

[1] WHEREAS, Sheldon Nascene formerly owned an interest in the First National Bank of Pine City and was its president until he divested himself of ownership in September 1976, and

[2] WHEREAS, during certain periods prior to September 1, 1976, Nascene as an Officer and Director of the First National Bank of Pine City made certain loans to Dr. Thomas K. Hines * * * for investment in certain restaurant businesses * * *, and

[3] WHEREAS, *said loans* became delinquent after the sale by Nascene of his stock in the Bank and his resignation as an Officer and Director of said bank in September 1976, * * *.

(Emphasis added.) The provision held to be ambiguous in *Nascene* was set out later in the agreement and stated: "That Nascene has deposited with the Bank certain monies to indemnify said Bank against *any and all loans* of Hines." (Emphasis supplied.)

At trial, Nascene sought to establish that the delinquency of "said loans" referred specifically to the preceding paragraph and was intended to mean loans made to Hines prior to September 1976, the date of Nascene's resignation from the Bank. Accordingly, Nascene contends the $40,000 capital injection loan approved in September 1977 was not intended to be included in the agreement.

Ray testified that he understood Nascene had agreed to reimburse the Bank for all Hines' loans, but admitted during cross-examination that he could not specifically recall knowledge of the $40,000 loan at the time the agreement was drafted.

Johnson testified that Nascene knew the $40,694.72 he placed into a Bank account would be used to pay off the participation at State Bank of Carlos and agreed to such an arrangement.

Nascene testified that he intended this sum to be held for indemnification and used only if collection efforts proved unsuccessful. He admitted, however, that he never made a demand on the Bank for the return of the $40,694.72 until the dispute over Ray's attorney's fees arose, over three years after the Bank's withdrawal of these funds.

The indemnification agreement also included the following provisions:

3. That the Bank agrees to continue to pursue its rights against Hines as they have been requested and instructed by Nascene *and agree to continue pursuing all remedies available for the collection of the amounts due on loans by Hines until instructed in writing to the contrary by Nascene.*

4. That Nascene agrees to indemnify the Bank for such amounts as the Bank has expended, incurred or will expend or

incur in the future, pursuing its remedies against Hines *in the event no recovery is made against Hines.*

(Emphasis supplied.)

At the close of Nascene's testimony, the first witness called, counsel for Nascene moved to amend the pleadings under Minn. R.Civ.P. 15.02 to include a claim that the Bank was negligent in failing to make use of certain stock securing the loans and in withdrawing monies set aside for indemnification should collection efforts prove unsuccessful. Counsel for the Bank objected:

[COUNSEL FOR THE BANK]: * * * This matter was heard at trial once. It went up on appeal. It has come back down on remand for the specific purpose for taking parol evidence to determine the intention of the parties. And to amend the Complaint at this time to allege an entire new cause of action, negligence, to amend to include a charge that they were negligent in failing to pursue their remedies, is totally inappropriate and prejudicial.

THE COURT: The Court agrees that it's not timely. The objection will be sustained. The amendment to the pleadings will be disallowed.

Johnson acknowledged that the Bank agreed to use its best efforts in collecting the Hines loans and stated that it did so under the circumstances.

We pursued collection efforts. And, as I recall, Dr. Hines subsequently went into bankruptcy, and about the only thing we could do at that time was file a proof of claim in bankruptcy, which was done, and that is about all we could do.

Both Johnson and Ray testified that they were aware the Hines loans were secured by stock. It is uncontroverted that this security was never collected. When asked during cross-examination whether the Bank chose not to pursue use of the collateral because it had already collected the money from Nascene, Johnson responded: "In a way, yes, we were aware there was stock and the loan had been collected." Johnson explained that the stock was "hard to sell." He could not recall the precise value of the stock but acknowledged there "was some

value." Ray testified that he did not collect on the stock because he believed it had "little or no value. It was a few cents a share."

Counsel for the Bank interjected during Johnson's cross-examination, seeking to clarify that evidence concerning the stock was being admitted only for matters already raised in the pleadings and that the Bank objected to admission of the evidence for any other purpose. The court allowed a continuing objection to the entire line of questioning but overruled the specific objection.

Rebuttal witness Andrew O'Connell, retained by Nascene to investigate the value of the stock, testified that in December 1978 and January 1979, the stock had a nationally quoted value of between $2.50 and $3.50 per share. He explained that this information was published daily and used by brokers all over the country. He acknowledged that the last nationally published bid for the stock was in January 1979 and that as of December 1979, the stock could have had a public market value of zero.

At the close of the evidence, Nascene again sought to amend the pleadings under rule 15.02, arguing that the Bank impliedly consented to litigate issues of negligence and breach of the agreement. The court stated:

I'm very concerned, counsel, about the timeliness of your amendment. You appeared before this Court when the matter was tried once before * * *. It went to the intermediate Court of Appeals. It was sent back down for retrial. There were motions made to this Court on this subject matter long ago and no motions of any type whatsoever made to amend the pleadings.

* * * To bring this matter before this Court at this late date suggesting a new theory, when specific mandate has been given by the intermediate Court of Appeals of the issues that the Court were to resolve, I think is inappropriate and untimely.

The trial court found that "Nascene and the Bank intended [the $40,694.72] to be

used to satisfy the participation of Nascene's State Bank of Carlos." The trial court further found that the ambiguous provision "to 'indemnify said Bank against any and all loans of Hines' was intended by the parties to include the September 12, 1977 'capital injection' loan to Dr. Hines in the amount of $40,000." No post-trial motions were made.

## ISSUES

1. Did the Bank consent to litigation of additional issues pertaining to negligence and to breach of the December 1978 agreement, and if not, should amendment have nonetheless been allowed?

2. Does the evidence support the trial court's findings and conclusions of law that the parties intended to include the $40,000 capital injection loan as part of the December 1979 agreement?

3. Is the Bank entitled to reasonable costs and disbursements and attorney fees as the prevailing party at trial?

## ANALYSIS

### I.

In this case, we are specifically asked to determine whether the Bank impliedly consented to litigate issues pertaining to negligence and breach of the December 1978 agreement. The framework for resolution of this issue is rule 15.02, which allows amendment of the pleadings to conform to the evidence:

> When issues not raised by the pleadings are tried *by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.*

Minn.R.Civ.P. 15.02 (emphasis supplied).

> Consent to litigate is implied either where a party fails to object to evidence inadmissible with respect to issues raised by the pleadings or where he puts in his own evidence relating to non-pleaded issues. There is a presumption that evidence is offered and received with reference to issues framed by the pleadings and consent is not implied where evidence is actually pertinent to

such issues regardless of its other probative value.

*Folk v. Home Mutual Insurance Co.,* 336 N.W.2d 265, 267 (Minn.1983). *See Roberge v. Cambridge Cooperative Creamery Co.,* 243 Minn. 230, 235, 67 N.W.2d 400, 404 (1954). *See also Hohenstein v. Goergen,* 287 Minn. 512, 514, 176 N.W.2d 749, 751 (1970) (per curiam); *Nor-Son, Inc. v. Nordell,* 369 N.W.2d 575, 578 (Minn.Ct.App. 1985), *pet. for rev. denied,* (Minn. Sept. 13, 1985); *Sohns v. Pederson,* 354 N.W.2d 852, 855 (Minn.Ct.App.1984).

> Litigation by consent is not to be applied artificially, but rather is to be implied where the novelty of the issues sought to be raised is reasonably apparent and the intent to try these issues *is clearly indicated by failure to object* or otherwise.

*Roberge,* 243 Minn. at 235, 67 N.W.2d at 404 (emphasis supplied); (quoted by *Hopper v. Rech,* 375 N.W.2d 538, 542 (Minn.Ct. App.1985), *pet. for rev. denied,* (Minn. Dec. 30, 1985)). Under rule 15.02, objection to proffered evidence as outside the issues raised in the pleadings does not in and of itself determine whether amendment to the pleadings should be allowed in a particular case. Rule 15.02 expressly provides for amendment of the pleadings, after objection on these grounds,

> when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence *would prejudice him in maintaining his action or defense upon the merits.* The court may grant a continuance to enable the objecting party to meet such evidence.

Minn.R.Civ.P. 15.02 (emphasis supplied).

■ Drawing these principles together, we must initially decide whether the Bank "seasonably" objected to evidence of stock securing the Hines loans and/or evidence of its collection efforts. *See Dale v. Pushor,* 246 Minn. 254, 263, 75 N.W.2d 595, 602 (1956). If the Bank failed to do so, we must determine whether this evidence was pertinent to issues already raised in the pleadings, for if it was, the trial court could

properly find that no new issue was impliedly litigated by consent. *See Folk,* 336 N.W.2d at 267.

However, if the evidence raised issues outside of the pleadings and the Bank failed to seasonably object to such evidence, it will be deemed to have impliedly consented to litigate these new issues. In such case, amendment to the pleadings should be allowed as a matter of course. *See Gracz v. Anderson,* 104 Minn. 476, 478, 116 N.W. 1116, 1117 (1908).

Alternately, if the Bank seasonably objected to the evidence as outside the issues already raised in the pleadings, we must determine whether it demonstrated sufficient prejudice resulting from amendment. *See Short v. Great Northern Life Insurance Co.,* 179 Minn. 19, 22, 228 N.W. 440, 441 (1929) (burden of proving prejudice is on the party opposing amendment of the pleadings during trial).

It is apparent from the record that we must focus our attention on the alternate analysis. The Bank clearly objected to evidence of the stock and its collection efforts toward the conclusion of Johnson's cross-examination testimony on the second day of trial.

> [COUNSEL FOR THE BANK]: I believe * * * perhaps the reason for eliciting this testimony is in support of counsel's * * * anticipated motion to amend the pleadings. *I would like to clarify that this evidence is being admitted only on the issues that are [currently] raised in the pleadings, and I would object to it being admitted for any other reason at this time.*
>
> THE COURT: I understand your objection, counsel. *You'll have a continuing objection to this entire line of questioning.* The objection is overruled.

(Emphasis supplied.)

Nascene argues that this objection is essentially meaningless since evidence relative to the stock and the Bank's agreement to use its "best efforts" in collecting the loans was allowed, *without* objection, for the balance of Johnson's testimony. This argument is unpersuasive.

As we have already noted, a party that "seasonably" objects to admission of evidence pertinent to an issue not raised in the pleadings does not imply his or her consent to litigate that issue.

> [D]efendant objected to evidence *at various intervals in the trial,* and the judge received the evidence *only for the purpose of considering it in relation to plaintiff's original complaint and not in relation to plaintiff's proposed amended complaint.* There could therefore be no amendment of the complaint under Rule 15.02 as a matter of course.

*Dale,* 246 Minn. at 263, 75 N.W.2d at 602 (emphasis supplied).

The Bank's objection during Johnson's cross-examination testimony cannot be viewed in isolation, as Nascene suggests. The record must be viewed in its entirety. Accordingly, we find significance in the fact that the Bank had previously objected to Nascene's motion to amend the pleadings at the beginning of trial and in the trial court's decision to allow a continuing objection to the entire line of questioning. Bolstering our conclusion that the Bank seasonably objected to evidence raising new issues, but in no way decisive of the question, is the existence of relevancy objections during testimony by both Johnson and O'Connell. "The mere failure to object to one question which was contrary to the theory on which plaintiff commenced that case, without more, can hardly be considered as an implied consent to litigate that question." *Phelps v. Benson,* 252 Minn. 457, 478, 90 N.W.2d 533, 547 (1958).

■ The Bank argued that it would be prejudiced by amendment of the pleadings since the case was remanded for the specific purpose of determining whether the parties intended reimbursement of all Hines loans or just loans made during Nascene's tenure with the Bank. The trial court agreed, stating:

> To bring this matter before this Court at this late date suggesting a new theory, when specific mandate has been given by the intermediate Court of Appeals * * *, I think is inappropriate and untimely.

While pleadings may be freely amended under rule 15.02 when justice so requires, the "liberality to be shown in the allowance of amendments depends in part upon the stage of the action." *Tomlinson Lumber Sales, Inc. v. J.D. Harrold Co.*, 263 Minn. 470, 474–75, 117 N.W.2d 203, 207 (1962) (quoting *Dale*, 246 Minn. at 262, 75 N.W.2d at 601). Moreover, consent to litigate will not be implied merely because the party opposing amendment fails to claim surprise or ask for a continuance, when timely objection is made. *Roberge*, 243 Minn. at 235, 67 N.W.2d at 404.

In *Nascene*, we specified that "we are remanding this case for admission of parol evidence to determine which loans the parties actually intended to include in the agreement." *Nascene*, 379 N.W.2d at 252. It is well established that a trial court may not vary the mandate of an appellate court or decide issues beyond those remanded. *In re Estate of Boysen*, 351 N.W.2d 398, 400 (Minn.Ct.App.1984). The trial court did not clearly abuse its discretion in refusing to allow amendment of the pleadings. *See Haase v. Haase*, 369 N.W.2d 311, 316 (Minn.Ct.App.1985), *pet. for rev. denied*, (Minn. Aug. 29, 1985).

## II.

■ Where the meaning of a contract is doubtful and the parties have given it practical construction by their conduct, such construction may be considered by the court in determining the meaning of the contract and in ascertaining mutual intent of the parties. *Johnson v. Quaal*, 250 Minn. 154, 157, 83 N.W.2d 796, 798 (1957). Evidence of Nascene's conduct reasonably supports the trial court's findings and conclusions that the parties intended to include the $40,000 capital injection loan as part of the December 1979 agreement.

On October 16, 1978, pursuant to informal agreement between the parties and two years after Nascene's resignation from the Bank, Nascene wrote a letter to Johnson. This letter was admitted into evidence and partially read into the record by Johnson: "This will acknowledge our agreement that I will pay to [the Bank] the outstanding indebtedness of Dr. Hines on or before October 30." The letter does not distinguish Hines' loans made prior to September 1976 from loans made after that time.

The evidence further supports the conclusion that the $40,694.72 was withdrawn to pay off the participation at State Bank of Carlos. On the same day, Nascene made separate withdrawals from his savings account in amounts that reflected the precise principal and interest due on Hines' two notes. The first, for $152,478.12, represented the outstanding balance for loans made prior to September 1976 and subsequently renewed by the Bank. The second, for $40,694.72, represented the outstanding balance for the capital injection loan. Since indebtedness on the renewed loans was fully satisfied, Nascene's need to advance an additional $40,694.72 to indemnify these earlier loans is inconsistent. The more reasonable inference is that Nascene intended the funds to be applied to pay off the participation at the State Bank of Carlos. The Bank's transfer of the funds to the State Bank of Carlos on the same day as Nascene's deposit is strong evidence of one continuous transaction.

Particularly noteworthy is Nascene's admission that he made no demand for return of the $40,694.72 until a dispute over attorney fees arose, *three years* after the Bank's use of the funds. Further, Nascene could have terminated the written agreement "at any time" and did not exercise this option.

## III.

■ The Bank argues that as the prevailing party at trial, it was entitled to costs and disbursements under Minn.Stat. § 549.04 (1986). We agree and remand for this limited purpose. The Bank is also entitled to award of costs and disbursements on appeal. Its request for attorney's fees, however, is denied.

## DECISION

The trial court is affirmed on the merits. The trial court's denial of the Bank request for costs and disbursements is reversed

and remanded for determination of this amount.

Affirmed in part, reversed in part and remanded.